## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAGDISH D. MUZUMDAR, | ) | |
| | ) | FILED: MARCH 21, 2008 |
| Plaintiff, | ) | 08CV1672    RCC |
| | ) | JUDGE GOTTSCHALL |
| VS. | ) | MAGISTRATE JUDGE BROWN |
| | ) | |
| THE PROGRESSIVE CORPORATION, | ) | |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY and PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF REMOVAL</u>

To the Honorable Judges of the United States District Court for the Northern District:

Removing party,   PROGRESSIVE SPECIALTY INSURANCE COMPANY (hereinafter referred to as "PROGRESSIVE"), by the undersigned attorney, Bill Porter of CHILTON YAMBERT & PORTER LLP, respectfully show this Court:

1.      Removing party is a Defendant in the above-entitled action.

2.      On February 15, 2008, the above-entitled action was commenced against several parties in the Sixteenth Judicial Circuit, Kane County, Illinois, and is pending in that court.

3.      The other two Defendants named above are not legal entities.

4.      On February 21, 2008, removing parties received service of the Declaratory Judgment Complaint by mail directed to removing parties' attorney, Bill Porter of CHILTON YAMBERT & PORTER LLP in Geneva, Illinois (a copy of the correspondence tendering the Declaratory Judgment Complaint is attached hereto, marked Exhibit "A", and made a part hereof).  This Notice is filed within 30 days after such service.

5.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      The above-entitled action involves citizens of different states, in that, at the time of commencement of this action in the Sixteenth Judicial Circuit, Kane County, Illinois, and since that time, Plaintiff was and still is a citizen and resident of the State of Illinois, and Defendant corporations were and still are incorporated in the State of Ohio, with their principal place of business located in the State of Ohio (see Affidavit attached hereto, marked Exhibit "B", and made a part hereof).

7.      This Court therefore has original jurisdiction of the above-entitled action pursuant to 28 USC § 1332, and, since Defendants, PROGRESSIVE, are incorporated in the State of Ohio, with their principal place of business located in the State of Ohio, removal of the action from the Sixteenth Judicial Circuit, Kane County, Illinois, to this Court is proper pursuant to 28 USC §1441(a).

8.      Copies of all process documents and pleadings served on the removing parties in the above-entitled action are attached hereto, being correspondence from Plaintiff's attorney, marked as Exhibit "A", and the Plaintiff's Declaratory Judgment Complaint, marked as Exhibit "C".

9.      Written notice of the Filing of this Notice of Removal will be given to Plaintiff promptly after the filing of this Notice as required by 28 USC § 1446(d).

10.     By filing this Notice of Removal, PROGRESSIVE does not waive any jurisdictional objection or any other defenses that are or may be available.

WHEREFORE, removing party prays that the above-entitled action be removed from the

Sixteenth Judicial Circuit, Kane County, Illinois, to this Court.

PROGRESSIVE SPECIALTY
INSURANCE COMPANY, Defendant,

s/ Bill Porter
Bill Porter
Attorney for Defendants
CHILTON YAMBERT & PORTER LLP
2000 S. Batavia Avenue, 2nd Floor
Geneva, Illinois 60134
(630) 262-4000
(630) 262-1144 – Fax
Attorney No: 6183435
bporter@cyp-law.com



# *A*moni Law
## Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER

JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506     *Also Licensed in Missouri & California

February 21, 2008

08CV1672    RCC
JUDGE GOTTSCHALL
MAGISTRATE JUDGE BROWN

William Porter
Chilton Yambert Porter & Young
2000 S. Batavia Ave., Second Floor
Geneva, IL 60134

RE:    *Muzumdar v. Progressive*
       Underinsured Motorist Arbitration Claim

Dear Mr. Porter,

Enclosed please find a copy of the Declaratory Judgment Complaint filed in this matter.

Sincerely yours,

AMONI LAW OFFICES, P.C.

Corkey Schwartz
Corkey Schwartz
Assistant

Encl.

cc:    Jagdish Muzumdar

**EXHIBIT**

"A"

Telephone: (630) 264.2020          Facsimile: (630) 801.9833          E-Mail: info@amonilaw.com

## IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
### KANE COUNTY, ILLINOIS

| | | |
|---|---|---|
| JAGDISH D. MUZUMDAR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 MR K 145 |
| | ) | |
| VS. | ) | |
| PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>AFFIDAVIT</u>

The undersigned, John P. Zoeckler, being first duly sworn upon oath, and being knowledgeable of the facts contained herein, and being competent to testify thereto, hereby state as follows:

A.    I am Corporate Claims Legal Counsel for THE PROGRESSIVE SPECIALTY INSURANCE COMPANY.

B.    At the time of the occurrence alleged in Plaintiff's Declaratory Judgment Complaint, on March 26, 2004, and at the time of filing of the lawsuit herein, on February 15, 2008,  PROGRESSIVE SPECIALTY INSURANCE COMPANY was and is incorporated in the State of Ohio, with its principal place of business located in the State of Ohio.

FURTHER AFFIANT SAYETH NAUGHT.

_____
John P. Zoeckler

SUBSCRIBED and SWORN to before me this 19th day of March, 2008.

_____
NOTARY PUBLIC

JEFFREY A. SCHENK, ATTORNEY
NOTARY PUBLIC - STATE OF OHIO
MY COMMISSION HAS NO EXPIRATION DATE.
SECTION 147.03 R.C.



EXHIBIT

"B"

## IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

JAGDISH D. MUZUMDAR,

    Plaintiff,

vs.

THE PROGRESSIVE CORPORATION
PROGRESSIVE CASUALTY
INSURANCE COMPANY and
PROGRESSIVE SPECIALTY
INSURANCE COMPANY,

    Defendants.

**NOTICE**
BY ORDER OF COURT THIS CASE IS HEREBY
SET FOR CASE MANAGEMENT CONFERENCE
BEFORE THE ABOVE NAMED JUDGE
ON _____6-10-08_____
_____ , AT __930__ (A.M.) P.M.
FAILURE TO APPEAR MAY RESULT IN THE
CASE BEING DISMISSED OR AN ORDER OF
DEFAULT BEING ENTERED.

### DECLARATORY JUDGMENT COMPLAINT

NOW COMES the Plaintiff, JAGDISH D. MUZUMDAR, by and through his attorneys,

Amoni Law Offices, P.C., and complaining of the Defendants, THE PROGRESSIVE

CORPORATION, PROGRESSIVE CASUALTY INSURANCE COMPANY and

PROGRESSIVE SPECIALTY INSURANCE COMPANY (hereinafter collectively referred to as

"PROGRESSIVE"), he states as follows:

### Count I:  Compel Arbitration Hearing on Plaintiff's Underinsured Motorist Claim

1.     On March 26, 2004, at approximately 7:55 p.m., the Plaintiff, Jagdish D.

Muzumdar, was operating a motor vehicle in a westerly direction in a westbound lane of Joliet

Road at or near the 6200 block of Joliet Road in Countryside, Cook County, Illinois.

2.     At the above stated date, time, and place, Jerome P. Gliva attempted to turn his

vehicle left from a driveway entrance at or near the 6200 block of Joliet Road in Countryside,

Cook County, Illinois into the westbound lane of Joliet Road, directly in front of the approaching

vehicle operated by Jagdish D. Muzumdar, thereby causing Jagdish D. Muzumdar to suddenly

decrease the speed of his motor vehicle to avoid colliding with the motor vehicle of Jerome P.

Gliva and causing the motor vehicle operated by Jagdish D. Muzumdar to be hit in the rear by



**EXHIBIT**

"C"

the motor vehicle operated by Timothy S. Gahr and thereby caused injuries and damages to JAGDISH D. MUZUMDAR that are in excess of $500,000.

3.    The Plaintiff settled his claims against Timothy S. Gahr for $20,000, the policy limits, and he settled his claims against Jerome Gliva for $60,000.

4.    At said date, time, and place, the Defendants, Progressive, were insurance companies that were engaged in issuing various policies of insurance, including auto insurance policies.

5.    At said date, time and place, the Plaintiff had underinsured motorist coverage with limits of $500,000 under Defendants' Auto Insurance Policy number 50014863-4. A certified copy of the aforementioned insurance policy and declarations page are attached as Exhibit 1 and incorporated herein.

6.    At all times material, the Defendants were required to comply with the provisions and terms of Defendants' Auto Insurance Policy number 50014863-4 and contract.

7.    At all times material, the Defendants were subject to and had to comply with 735 ILCS 5/2-1003(d).

8.    At all times material, the Plaintiff has complied with the provisions and terms of Defendants' Auto Insurance Policy number 50014863-4 and contract.

9.    On June 18, 2004, the Plaintiff made a timely demand for underinsured motorist arbitration with the Defendants. A copy of this demand for underinsured motorist arbitration is attached as Exhibit 2.

10.    The Defendants agreed to arbitrate the Plaintiff's underinsured motorist claim and named an arbitrator and retained counsel on their behalf.

11. On May 18, 2007, the arbitration hearing was initially set for July 23, 2007. See Exhibit 3 attached and incorporated herein.

12. On May 21, 2007, the arbitration hearing was cancelled due to a conflict in the schedule of the Plaintiff's attorneys. See Exhibit 4 attached and incorporated herein.

13. On June 28, 2007, the arbitration hearing was re-set for October 23, 2007. See Exhibit 5 attached and incorporated herein.

14. On July 12, 2007, the arbitration hearing was again re-set for November 5, 2007. See Exhibit 6 attached and incorporated herein.

15. On July 27, 2007, the Defendants requested that the Plaintiff submit to an independent medical examination ("IME") on August 31, 2007, by their chosen physician, Dr. Steven Mather. See Exhibit 7 attached and incorporated herein.

16. On August 2, 2007, the Plaintiff agreed to the IME and informed the Defendants that the Plaintiff's attorney, a court reporter, and a videographer would attend the IME. See Exhibit 8 attached and incorporated herein.

17. On August 8, 2007, the Defendants' attorney stated that no one else was allowed to be present at the IME other than the Plaintiff and the Defendants' physician. See Exhibit 9 attached and incorporated herein.

18. On August 13, 2007, the Plaintiff's attorneys informed the Defendants' attorneys that the Plaintiff was entitled to have a person of his choice present at the IME pursuant to 735 ILCS 5/2-1003(d) and Illinois caselaw. See Exhibit 10 attached and incorporated herein.

19. On August 16, 2007, the Defendants informed the Plaintiff that a different physician, Dr. J.S. Player, would do an IME of the Plaintiff on August 29, 2007 and allow a

3

videographer and court reporter and the Plaintiff's attorney to be present. See Exhibit 11 attached and incorporated herein.

20.     On August 29, 2007, the Plaintiff, his attorney, a court reporter and a videographer all appeared at Dr. Player's office, but before the exam started, Dr. Player, unilaterally chose not to proceed with the exam.

21.     On September 26, 2007, the arbitration hearing on the Plaintiff's UIM claims was re-set to December 7, 2007 at the request of the Defendants' arbitrator. See Exhibit 12 attached and incorporated herein.

22.     On November 12, 2007, the Defendants' attorney stated that he wished Dr. Mather to perform an IME of the Plaintiff but would not agree to a court reporter or a videographer to be present. See Exhibit 13 attached and incorporated herein.

23.     On and before November 29, 2007, the Plaintiff's attorneys requested dates for this IME by Dr. Mather, but the Defendants never gave any such available dates. See Exhibit 14 attached and incorporated herein.

24.     On November 29, 2007, the Plaintiff's attorneys informed the Defendants that they were going to proceed with the December 7, 2007 arbitration hearing. See Exhibit 14 attached and incorporated herein.

25.     On November 29, 2007, the Defendants' attorney unilaterally cancelled the December 7, 2007 arbitration hearing. See Exhibit 15 attached and incorporated herein.

26.     On December 10, 2007, the Defendants re-set the arbitration hearing for February 26, 2008. See Exhibit 16 attached and incorporated herein.

27.     Between December 10, 2007 and January 21, 2008, the Defendants' attorney informed the Plaintiff's attorney that he could not find a physician who would allow a videographer to be present.

28.     Between December 10, 2007 and January 21, 2008, and on January 21, 2008, the Plaintiff's attorneys informed the Defendants' attorneys that Dr. Bruce Montella was willing to perform the IME of the Plaintiff with attorneys, court reporters and videographers present.  See Exhibit 17 attached and incorporated herein.

29.     On January 21, 2008, the Plaintiff again stated his intention to proceed with the February 26, 2008 arbitration hearing.

30.     On January 25, 2008, the Plaintiffs' attorneys delivered copies of the documents he intended to present at the arbitration pursuant to Illinois Supreme Court Rule 90 and at that time the Defendants' attorney indicated that the Defendants did not want Dr. Montella to perform the IME and that they would find a different physician to do the IME before the hearing and would proceed with the February 26, 2008 hearing.

31.     On February 15, 2008, the Plaintiff's attorney telephoned the Defendants' attorney to confirm that the February 26, 2008 hearing was going to proceed and in response the Defendants' attorney stated that he was canceling the February 26, 2008 hearing because he had not found a physician who would do an IME in the presence of a videographer and would not allow a court reporter or videographer to be present at such an IME without a court order allowing it.

32.     The Plaintiff is going to have physicians testify in person at the arbitration hearing in this matter and needs a date certain for the arbitration hearing to take place.

33.    The Defendants have unilaterally cancelled the arbitration hearing of the Plaintiff's uninsured motorist claims on two occasions with very short notice and for no justifiable reason and in bad faith and have unnecessarily, unreasonably and vexatiously delayed the arbitration hearing in this matter to the detriment and prejudice of the Plaintiff.

34.    There exists an actual controversy between the parties as to setting and having the arbitration hearing on the Plaintiff's underinsured motorist claims under the aforementioned insurance policy and the Defendants' contractual duties to conduct the arbitration hearing in a reasonable and timely manner under the aforementioned policy.

WHEREFORE the Plaintiff, JAGDISH MUZUMDAR, prays for the following relief:

A.    That an Order be entered wherein the Court sets a date certain for the completion of any independent medical exam of the Plaintiff pursuant to Illinois Supreme Court Rule 215 and in conformance with 735 ILCS 5/2-1003(d) and if not completed, then the right for such an examination is waived;

B.    That an Order be entered wherein the Court sets a date certain for the completion of the arbitration hearing of the Plaintiff's underinsured motorist claims at issue in this case and pursuant to Illinois Supreme Court Rule 90(c); and

C.    For such other relief as this Court deems just.

## Count II:  Bad Faith Claims against Defendants pursuant to 215 ILCS 5/154.6 and 215 ILCS 5/155

1-34.    The Plaintiffs reallege and expressly incorporate Paragraphs 1-34 of Count I as and for Paragraphs 1-34 of this Count II as if fully set forth herein.

35.    Under the aforementioned written insurance policy, the Defendants PROGRESSIVE had a contractual duty to reasonably and timely conduct an arbitration hearing

6

of the Plaintiff's underinsured motorist claims and had an inherent duty of good faith and fair dealing the performance of the terms of the aforementioned insurance policy and contract.

36.     Defendants PROGRESSIVE, through its agents and employees and attorneys, breached the aforementioned written contracts of insurance by unilaterally canceling the arbitration hearing of the Plaintiff's uninsured motorist claims on two occasions for no justifiable reason and in bad faith and have unnecessarily, unreasonably and vexatiously delayed the arbitration hearing in this matter to the detriment and prejudice of the Plaintiff and failing to comply with 735 ILCS 5/2-1003(d).

37.     Though requested to do so, Defendants PROGRESSIVE, through their agents and employees, have, in bad faith, vexatiously and unreasonably failed to conduct the arbitration hearing of the Plaintiff's underinsured motorist claims and violated 215 ILCS 5/154.5 and 215 ILCS 5/154.6 by committing one or more one or more of the following acts which constitute improper claims practice:

a.      Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.

b.      Compelling the Plaintiffs to institute suits to recover amounts due under its policies.

c.      Engaging in any other acts which are in substance equivalent to any of the foregoing acts and those stated in 215 ILCS 5/154.6.

38.     As a result of one or more of the above improper claims practices by the agents and employees of Defendants PROGRESSIVE and the aforementioned substantial and continual breach of these written contracts of insurance by the agents and employees of Defendants PROGRESSIVE, the Plaintiffs have incurred and will continue to incur significant foreseeable and consequential economic damages and attorney fees and costs in bringing this claim.

7

WHEREFORE, the Plaintiff, JAGDISH MUZUMDAR, prays for judgment in excess of $50,000 in favor of the Plaintiff and against the Defendants plus attorneys fees and costs of suit and other damages as provided by 215 ILCS 5/155 and for other relief the Court deems just and appropriate.

AMONI LAW OFFICES, P.C.,

BY: _____

Edward R. Peterka

AMONI LAW OFFICES, P.C.,
One N. Constitution Drive
Aurora, Illinois 60506
Telephone:   (630) 264-2020
Facsimile:   (630) 801-9833
Illinois ARDC Atty. No. 6220416

8

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

| | | |
|---|---|---|
| JAGDISH D. MUZUMDAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| THE PROGRESSIVE CORPORATION, | ) | |
| PROGRESSIVE CASUALTY | ) | |
| INSURANCE COMPANY and | ) | |
| PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ILLINOIS SUPREME COURT RULE 222(B) AFFIDAVIT

EDWARD R. PETERKA, being first duly sworn on oath, deposes and states as follows:

1.     I am one of the attorneys for the Plaintiff in this matter and, if called upon to do so, could testify competently to the following.

2.     The damages claimed are in excess of $50,000.00.

_____
                         Edward R. Peterka

SUBSCRIBED and SWORN to before me on February 15, 2008,


BY: _____
        Notary Public

AMONI LAW OFFICES, P.C.
One North Constitution Drive
Aurora, Illinois  60506
Telephone:     (630) 264-2020
Facsimile:      (630) 801-9111
Illinois ARDC Atty. No. 6220416

"OFFICIAL SEAL"
JUNE KOSTKA
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 05/11/2008

**PROGRESSIVE**®

SECURE FUTURES INS
8700 W BYRN MAWR #600
CHICAGO, IL 60631

**Policy number: 50014863-4**
Progressive Specialty Insurance Company
May 5, 2004
Policy Period: Aug 1, 2003 - Aug 1, 2004
Page 1 of 2

JAGDISH D MUZUMDAR
1303 MIDWEST CLUB PKWY
OAKBROOK, IL 60523

**personal.progressive.com**
Make payments, check billing activity, make
policy changes or check status of a claim.

**773-380-9700**
SECURE FUTURES INS
Contact your agent during business hours.

**800-PROGRESSIVE (800-776-4737)**
For policy service and claims service,
P.O. Box 6949
Cleveland, OH 44101

# Auto Insurance
# Coverage Summary
## This is your Declarations Page
## Your policy information has changed

Your coverage began on August 1, 2003 at 12:01 a.m. This policy expires on August 1, 2004 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle. The policy contract is form 9608 IL (07/01). The contract is modified by form 7951 (12/02).

Progressive Specialty Insurance Company is a stock company (NYSE: PGR).

## Policy changes effective April 15, 2004

| | |
|---|---|
| Premium change: | $0.00 |
| Changes: | The lienholder information for NISSAN MOTOR ACCEP has changed. |

## Drivers and household residents

| | Additional information |
|---|---|
| JAGDISH D MUZUMDAR | Named insured |
| PRATIMA MUZUMDAR | |
| AMEY MUZUMDAR | |

## Outline of general policy coverages

| | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $2,140 |
| Bodily Injury and Property Damage Liability | $500,000 combined single limit | | |
| Uninsured/Underinsured Motorist Bodily Injury | $500,000 combined single limit | | 193 |
| Medical Payments | $1,000 each person | | 47 |
| Total general policy coverage premium | | | **$2,380** |

## Outline of vehicle coverage

General policy coverages apply to all listed vehicles unless indicated otherwise.

**1991 Mazda 323/Se**
VIN JM1BG2328M0202264

| | Limits | Deductible | Premium |
|---|---|---|---|
| Comprehensive | | $1,000 | $20 |
| Collision | | $1,000 | 134 |
| Roadside Assistance | | | free |
| Total vehicle coverage premium for 1991 Mazda | | | **$154** |

**PLAINTIFF'S EXHIBIT**
tabbies®
_____ 1

Form 6489 IL (10/03)



Continued

Policy number: 50014863-4
JAGDISH D MUZUMDAR
Page 2 of 2

### 2000 Nissan Maxima Gle/Gxe/Se 4D

| VIN JN1CA31A3YT016595 | Limits | Deductible | Premium |
|---|---|---|---|
| Comprehensive | | $1,000 | $75 |
| Collision | | $1,000 | 357 |
| Roadside Assistance | | | free |
| Total vehicle coverage premium for 2000 Nissan | | | **$432** |

### 2001 Acura 3.2 CL Type-S CP

| VIN 19UYA42601A006533 | Limits | Deductible | Premium |
|---|---|---|---|
| Comprehensive | | $1,000 | $69 |
| Collision | | $1,000 | 427 |
| Roadside Assistance | | | free |
| Total vehicle coverage premium for 2001 Acura | | | **$496** |

### 2004 Nissan Pathfinder Le/Se

| VIN JN8DR09Y54W913845 | Limits | Deductible | Premium |
|---|---|---|---|
| Comprehensive | | $1,000 | $57 |
| Collision | | $1,000 | 438 |
| Roadside Assistance | | | free |
| Total vehicle coverage premium for 2004 Nissan ( business use ) | | | **$495** |
| **Total 12 month policy premium** | | | **$3,957** |

## Premium discounts

| Policy | |
|---|---|
| 50014863-4 | home owner, paid in full and multi-car |

| Vehicle | |
|---|---|
| 2000 Nissan Maxima Gle/Gxe/Se 4D | anti-theft device |
| 2001 Acura 3.2 CL Type-S CP | anti-theft device |
| 2004 Nissan Pathfinder Le/Se | anti-theft device |

## Lienholder and additional interest information

We will send certain notices such as coverage summaries and cancellation notices to the following:

| Lienholder: | NISSAN MOTOR ACCEP |
|---|---|
| | PO BOX 390888 MINNEAPOLIS, MN 55439 |
| | 2000 Nissan Maxima Gle/Gxe/Se 4D  (JN1CA31A3YT016595) |
| Lienholder: | AHF C/O PDP SERVICES |
| | PO BOX 650201 HUNT VALLEY, MD 21065 |
| | 2001 Acura 3.2 CL Type-S CP  (19UYA42601A006533) |
| Additional Interest: | AHF C/O PDP SERVICES |
| | PO BOX 988 HUNT VALLEY, MD 21030 |



*9608 12 0701*



PROGRESSIVE ®

# ILLINOIS
# MOTOR VEHICLE
# POLICY

I CERTIFY THIS TO BE
A TRUE AND ACCURATE COPY.
BY _Robert N. Philip_
DATE _4/14/05_

Form No. 9608 IL (07/01)
© 2001 Progressive Casualty Insurance Company. All Rights Reserved.

## CONTENTS

**YOUR DUTIES**
What You Must Do In Case of an
   Accident or Loss. . . . . . . . . . . . . . . . . 1

**GENERAL DEFINITIONS** . . . . . . . . . . . . . 2

**PART I - LIABILITY TO OTHERS**
Insuring Agreement. . . . . . . . . . . . . . . . 6
Additional Definitions. . . . . . . . . . . . . . 6
Additional Payments . . . . . . . . . . . . . . . 7
Exclusions. . . . . . . . . . . . . . . . . . . . . . 8
Limits of Liability . . . . . . . . . . . . . . . . 10
Financial Responsibility Laws . . . . . . . . 11
Other Insurance. . . . . . . . . . . . . . . . . . 11
Out-of-State Coverage . . . . . . . . . . . . 12

**PART II - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement. . . . . . . . . . . . . . . 12
Additional Definitions. . . . . . . . . . . . . . 13
Exclusions. . . . . . . . . . . . . . . . . . . . . 14
Limits of Liability . . . . . . . . . . . . . . . . 15
Other Insurance . . . . . . . . . . . . . . . . . 15

**PART III - UNINSURED/UNDERINSURED
MOTORIST COVERAGE**
Insuring Agreement - Uninsured/
   Underinsured Motorist
   Bodily Injury Coverage . . . . . . . . . . . 16
Insuring Agreement - Uninsured Motorist
   Property Damage Coverage . . . . . . . . 16
Additional Definitions. . . . . . . . . . . . . . 17
Exclusions. . . . . . . . . . . . . . . . . . . . . 20
Limits of Liability . . . . . . . . . . . . . . . . 21
Other Insurance . . . . . . . . . . . . . . . . . 24
Arbitration . . . . . . . . . . . . . . . . . . . . . 24

**PART IV - DAMAGE TO A VEHICLE**
Insuring Agreement - Collision
   Coverage . . . . . . . . . . . . . . . . . . . . . 26
Insuring Agreement - Comprehensive
   Coverage . . . . . . . . . . . . . . . . . . . . . 26
Insuring Agreement - Custom Parts
   or Equipment Coverage &
   Additional Custom Parts or
   Equipment Coverage . . . . . . . . . . . . 27
Additional Definitions. . . . . . . . . . . . . . 29
Exclusions. . . . . . . . . . . . . . . . . . . . . 30
Limits of Liability . . . . . . . . . . . . . . . . 32
Insuring Agreement - Rental
   Reimbursement Coverage . . . . . . . . . 35
Insuring Agreement - Limited
   Loan/Lease Payoff Coverage . . . . . . . 36
Payment of Loss . . . . . . . . . . . . . . . . . 36
No Benefit to Bailee . . . . . . . . . . . . . . 37
Loss Payee Agreement . . . . . . . . . . . . 37
Other Insurance . . . . . . . . . . . . . . . . . 37
Appraisal. . . . . . . . . . . . . . . . . . . . . . 38

**PART V - ROADSIDE ASSISTANCE
COVERAGE**
Insuring Agreement. . . . . . . . . . . . . . . 38
Additional Definitions. . . . . . . . . . . . . . 38
Exclusions. . . . . . . . . . . . . . . . . . . . . 39
Unauthorized Service Provider . . . . . . . 40

**GENERAL PROVISIONS**
Policy Period and Territory. . . . . . . . . . 40
Policy Changes. . . . . . . . . . . . . . . . . . 40
Terms of Policy Conformed to
   Statutes . . . . . . . . . . . . . . . . . . . . . 41
Vehicles with Comprehensive
   Coverage and/or Collision
   Coverage Only . . . . . . . . . . . . . . . . 42

Transfer . . . . . . . . . . . . . . . . . . . . . . 42
Fraud or Misrepresentation . . . . . . . . . 42
Payment of Premium. . . . . . . . . . . . . . 43
Cancellation . . . . . . . . . . . . . . . . . . . 44
Cancellation Refund . . . . . . . . . . . . . . 46
Nonrenewal. . . . . . . . . . . . . . . . . . . . 47
Proof of Notice . . . . . . . . . . . . . . . . . 47
Automatic Termination. . . . . . . . . . . . . 47
Coverage Changes . . . . . . . . . . . . . . . 47
Legal Action Against Us. . . . . . . . . . . . 48
Our Rights to Recover Payment . . . . . . 48
Joint and Individual Interests . . . . . . . . 50
Bankruptcy . . . . . . . . . . . . . . . . . . . . 50

**CONSUMER HOTLINE** . . . . . . . . . . . . . . . 50

**NAMED DRIVER EXCLUSION** . . . . . . . . . . 50

**NAMED OPERATOR - NON-OWNED**
**VEHICLE COVERAGE** . . . . . . . . . . . . . . . . 51

## ILLINOIS MOTOR VEHICLE POLICY

If **you** pay **your** premium on time, **we** will provide the insurance described in this policy.

## YOUR DUTIES

### WHAT YOU MUST DO IN CASE OF AN ACCIDENT OR LOSS

**Notify Us As Soon As Practicable**

If a person or vehicle covered by this policy is involved in an **accident** or **loss** for which this insurance may apply, report it to **us** within twenty-four (24) hours or as soon as practicable by calling **us** at 1-800-PROGRESSIVE.

**For coverage to apply under this policy, you or an insured person must promptly report each accident or loss even if an insured person is not at fault.**

**You** should provide **us** with the following **accident** or **loss** information as soon as it is available:
- time;
- place;
- circumstances of the **accident** or **loss** (for example, how the accident happened and weather conditions);
- names and addresses of all persons involved;
- names and addresses of any witnesses; and
- the license plate numbers of the vehicles involved.

**You** or an insured person should also notify the police within twenty-four (24) hours or as soon as practicable if:
- **you** cannot identify the owner or operator of a vehicle involved in the **accident**; or
- theft or vandalism has occurred.

A person claiming coverage must:

- cooperate with **us** in any matter concerning a claim or lawsuit;
- provide any written proof of loss **we** may reasonably require;
- allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
- promptly send **us** any and all legal papers relating to any claim or lawsuit;
- attend hearings and trials as **we** require;
- take reasonable steps after a **loss** to protect the **covered vehicle**, non-owned vehicle, or trailer from further **loss**. **We** will pay reasonable expenses incurred in providing that protection. If **you** fail to do so, any further damages will not be covered under this policy;
- allow **us** to have the damaged **covered vehicle**, non-owned vehicle, or trailer inspected and appraised before its repair or disposal;
- submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
- authorize **us** to obtain medical and other records.

## GENERAL DEFINITIONS

Except as otherwise defined in this policy, terms appearing in boldface will have the following meaning:

1. "**Accident**" means a sudden, unexpected, and unintended occurrence.
2. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
3. "**Business**" includes a trade, profession, or occupation.

4. "**Child restraint system**" means any device which meets the standards of the United States Department of Transportation designed to restrain, seat or position children.
5. "**Covered vehicle**" means:
   a. any **vehicle** shown on the **Declarations Page**, unless **you** have asked **us** to delete that **vehicle** from the policy;
   b. any additional **vehicle** on the date **you** become the **owner** if:
      (i) **you** acquire the **vehicle** during the policy period shown on the **Declarations Page**;
      (ii) **we** insure all **vehicles owned** by **you**; and
      (iii) no other insurance policy provides coverage for that **vehicle**.

      If **we** provide coverage for a **vehicle you** acquire in addition to any **vehicle** shown on the **Declarations Page**, **we** will provide the broadest coverage **we** provide for any **vehicle** shown on the **Declarations Page**. **We** will provide that coverage for a period of thirty (30) days after **you** become the **owner**. **We** will not provide coverage after this thirty (30) day period, unless within this period **you** ask **us** to insure the additional **vehicle**. If **you** add any coverage to this policy or increase **your** limits, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage or increase **your** limits; and
   c. any replacement **vehicle** on the date **you** become the **owner** if:
      (i) **you** acquire the **vehicle** during the policy period shown on the **Declarations Page**;
      (ii) the **vehicle** that **you** acquire replaces one shown on the **Declarations Page**; and
      (iii) no other insurance policy provides coverage for that **vehicle**.

2

3

If the **vehicle** that **you** acquire replaces one shown on the **Declarations Page**, it will have the same coverage as the **vehicle** it replaces. **You** must ask **us** to insure a replacement **vehicle** within thirty (30) days after **you** become the **owner** if **you** want to continue any coverage **you** had under Part IV - Damage To A Vehicle. If the **vehicle** replaced did not have coverage under Part IV - Damage To A Vehicle, **you** may add coverage for the replacement **vehicle**. However, if **you** add coverage under Part IV - Damage To A Vehicle, it will not become effective until after **you** ask **us** to add the coverage. If **you** add any other coverage to this policy or increase **your** limits, it will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

6. "**Declarations Page**" means the document from **us** listing:
   a. the types of coverage **you** have elected;
   b. the limit for each coverage;
   c. the cost for each coverage;
   d. the specified **vehicles** covered by this policy;
   e. the types of coverage for each **vehicle**; and
   f. other information applicable to this policy.

7. "**Loss**" means sudden, direct, and accidental loss or damage.

8. "**Occupying**" means in, on, entering, or exiting.

9. "**Owned**" means the person:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
   c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.

10. "**Owner**" means any person who, with respect to a vehicle:
    a. holds legal title to the vehicle;
    b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
    c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.

11. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage, or adoption, including a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will be considered residents if they intend to continue to reside in **your** household.

12. "**Vehicle**" and "**vehicles**" mean a land motor vehicle:
    a. of the private passenger, pickup body, or sedan delivery type;
    b. designed for operation principally upon public roads;
    c. with at least four wheels; and
    d. with a gross vehicle weight of 10,000 pounds or less.

13. "**We**", "**Us**", and "**Our**" mean the company providing the insurance, as shown on the **Declarations Page**.

14. "**You**" and "**Your**" mean:
    a. a person or persons shown as a named insured on the **Declarations Page**; and
    b. the spouse of a named insured if residing in the same household.

4

5

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for liability coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an **accident** arising out of the:

1. ownership, maintenance, or use of a **vehicle**; or
2. use of any **trailer** while attached to a:
   a. **covered vehicle**; or
   b. **non-owned vehicle** operated by an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I. If a lawsuit is brought against an **insured person** with respect to a claim for acts or alleged acts covered under this Part I, seeking both compensatory and punitive or exemplary damages, **we** will provide a defense to such lawsuit without liability for any punitive or exemplary damages.

### ADDITIONAL DEFINITIONS

When used in this Part I:

1. "**Insured person**" and "**insured persons**" mean:
   a. **you** or a **relative** with respect to an **accident** arising out of the ownership, maintenance, or use of a **covered vehicle**;
   b. any person with respect to an **accident** arising out of that person's use of a **covered vehicle** with the express or implied permission of **you** or a **relative**;
   c. a **relative** with respect to an **accident** arising out of the maintenance or use of a **non-owned vehicle** with the express

or implied permission of the **owner** of the **vehicle**;
   d. **you** with respect to an **accident** arising out of the maintenance or use of any **vehicle** with the express or implied permission of the **owner** of the **vehicle**;
   e. any person or organization with respect only to vicarious liability for an **accident** arising out of the use of a **covered vehicle** or **non-owned vehicle** by a person described in a, b, c, or d above; and
   f. any Additional Interest Insured designated by **you** in **your** application or by a change request agreed to by **us**, with respect to liability for an **accident** arising out of the use of a **covered vehicle** or **non-owned vehicle** by a person described in a, b, c, or d above.

2. "**Non-owned vehicle**" means any **vehicle** that is not **owned** by **you**, a **relative**, or the named insured's non-resident spouse.

3. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

4. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by a **vehicle**, but that is not used:
   a. for commercial or **business** purposes;
   b. as a primary residence;
   c. as a premises for office, store or display purposes; or
   d. as a passenger conveyance.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1. all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid or tendered that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we**

6

7

have not been given notice of suit or the opportunity to defend an **insured person**;

3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;

4. up to $250 for a bail bond required because of an **accident** arising out of the ownership, maintenance, or use of a **covered vehicle** or **non-owned vehicle**. **We** have no duty to apply for or furnish this bond; and

5. reasonable expenses, including loss of earnings up to $200 a day, incurred at **our** request.

**EXCLUSIONS** - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

Coverage under this Part I, including **our** duty to defend, does not apply to:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of a **vehicle** or **trailer** while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;

2. any liability assumed by an **insured person** under any contract or agreement;

3. **bodily injury** to an employee of an **insured person** arising out of or within the course of employment, except for domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. **bodily injury** or **property damage** arising out of an **accident** involving a **vehicle** or **trailer** while being used by a person while employed or engaged in the **business** of

selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion:

a. applies only to the damages that are in excess of the minimum limits of liability coverage required by the Illinois Motor Vehicle Safety and Family Financial Responsibility Law; and

b. does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using a **covered vehicle**;

5. **bodily injury** or **property damage** resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;

7. **bodily injury** or **property damage** for which insurance is afforded under a nuclear energy liability insurance contract;

8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

9. **bodily injury** or **property damage** caused by an intentional act of an **insured person** or at the direction of an **insured person**;

10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of an **insured person** or a person residing in **your** household. However, this exclusion does not apply to:

a. a rented residence or a rented garage damaged by a **covered vehicle**; or

b. **property damage** to another **covered vehicle**;

11. **bodily injury** or **property damage** resulting from a **relative's** operation or use of a vehicle, other than a **covered vehicle**, owned by a person who resides with **you**;

12. **bodily injury** or **property damage** resulting from **your** operation or use of a vehicle **owned** by **you**, other than a **covered vehicle**; or

8

9

13. **bodily injury** or **property damage** arising out of the use of a **covered vehicle** while leased or rented to others. However, this exclusion does not apply to the operation of a **covered vehicle** by **you** or a **relative**.

## LIMITS OF LIABILITY

The limit of liability shown on the **Declarations Page** is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered vehicles**;
3. **trailers** shown on the **Declarations Page**;
4. **insured persons**;
5. lawsuits brought;
6. vehicles involved in an **accident**; or
7. premiums paid.

If the **Declarations Page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one **accident**. However, without changing this total "each accident" limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If **your Declarations Page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** for which an **insured person** becomes liable as a result of any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to a person and all claims of others derived from

such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

No one will be entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I shall be reduced by any payment to that person under Part III - Uninsured/Underinsured Motorist Coverage. However, this provision shall not reduce coverage under this Part I to an amount less than the statutorily required minimum liability coverage.

A **vehicle** and attached **trailer** are considered one **vehicle**. Therefore, the Limits of Liability will not be increased for an **accident** involving a **vehicle** which has an attached **trailer**.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. **You** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE

If there is other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable limits. However, any insurance **we** provide for a:
1. **vehicle**, other than a **covered vehicle**; or
2. **trailer**, other than a **trailer** being towed by a **covered vehicle**;
will be excess over any other collectible insurance, self-insurance, or bond.

## OUT-OF-STATE COVERAGE

If an **accident** to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered vehicle** is principally garaged, and the state, province, territory or possession has:

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **Declarations Page**, this policy will provide the higher limit; or

2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses a **vehicle** in that state, province, territory or possession, this policy will provide the greater of:
   a. the required minimum amounts and types of coverage; or
   b. the Limits of Liability under this policy.

## PART II - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Medical Payments Coverage, **we** will pay the **usual and customary charge** for reasonable and necessary expenses, incurred within three (3) years from the date of an **accident**, for medical and funeral services because of **bodily injury**:

1. sustained by an **insured person**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance or use of a motor vehicle or **trailer**.

Any dispute as to the **usual and customary charge** will be resolved between the service provider and **us**.

## ADDITIONAL DEFINITIONS

When used in this Part II:
1. "**Insured person**" and "**insured persons**" mean:
   a. **you** while **occupying** any **vehicle**, other than a **vehicle owned** by **you** which is not a **covered vehicle**;
   b. a **relative** while **occupying** a **covered vehicle** or **non-owned vehicle**;
   c. **you** or any **relative** when struck by a motor vehicle of any type, or a trailer, while not **occupying** a motor vehicle;
   d. any other person while **occupying** a **covered vehicle**; and
   e. any person **occupying** a trailer:
      (i) shown on the **Declarations Page**; or
      (ii) **owned** by **you** while attached to a **covered vehicle**.

2. "**Non-owned vehicle**" means any **vehicle** that is not **owned** by **you**, a **relative**, or the named insured's non-resident spouse.

3. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by a land motor vehicle, but that is not used:
   a. for commercial or **business** purposes;
   b. as a primary residence;
   c. as a premises for office, store or display purposes; or
   d. as a passenger conveyance.

4. "**Usual and customary charge**" means an amount which **we** determine represents a customary charge for services in the geographical area in which the service is rendered. **We** shall determine the usual and customary charge through the use of independent sources of **our** choice.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II does not apply to **bodily injury:**

1. sustained while **occupying** a **vehicle** while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to:
   a. shared-expense car pools; or
   b. **bodily injury** sustained by **you** or a **relative** while a passenger in a taxi or limousine of the private passenger type **vehicle** which is not **owned**, rented, or leased for use by **you** or a **relative;**

2. sustained while **occupying** any **vehicle** or **trailer** while being used as a residence or premises;

3. if workers' compensation benefits are available for the **bodily injury;**

4. arising out of an **accident** involving a **vehicle** or **trailer** while being used by a person while employed or engaged in the **business** of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion does not apply to **you,** a **relative,** or an agent or employee of **you** or a **relative,** when using a **covered vehicle;**

5. resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

6. due to a nuclear reaction or radiation;

7. for which insurance is afforded under a nuclear energy liability insurance contract;

8. for which the United States Government is liable under the Federal Tort Claims Act;

9. sustained by any person while **occupying** a **covered vehicle** or **trailer** without the express or implied permission of **you** or a **relative;**

10. sustained by **you** or a **relative** while **occupying** a **non-owned vehicle** without the express or implied permission of the **owner;** or

11. that is intentionally inflicted on an **insured person** at that person's request or self-inflicted.

## LIMITS OF LIABILITY

The Medical Payments limit of liability shown on the **Declarations Page** is the most **we** will pay for each **insured person** injured in any one **accident,** regardless of the number of:

1. claims made;
2. **covered vehicles;**
3. **trailers** shown on the **Declarations Page;**
4. **insured persons;**
5. lawsuits brought;
6. vehicles involved in an **accident;** or
7. premiums paid.

Any amount payable to an **insured person** under this Part II will be reduced by any amount paid or payable for the same expense under Part I - Liability To Others or Part III - Uninsured/Underinsured Motorist Coverage.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

## OTHER INSURANCE

If there is other applicable **vehicle** medical payments insurance, **we** will pay only **our** share of the medical and funeral services. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person** **occupying** a:

1. **vehicle,** other than a **covered vehicle;** or
2. **trailer,** other than a **trailer** being towed by a **covered vehicle;**

14

15

will be excess over any other **vehicle** or **trailer** insurance providing payments for medical or funeral services.

### PART III - UNINSURED/UNDERINSURED MOTORIST COVERAGE

### INSURING AGREEMENT - UNINSURED/ UNDERINSURED MOTORIST BODILY INJURY COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle** or **underinsured motor vehicle**.

### INSURING AGREEMENT - UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE

Subject to the Limits of Liability, if **you** pay a premium for Uninsured Motorist Property Damage Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured person** is entitled to recover from the **owner** or operator of an **uninsured motor vehicle** due to **property damage**:

1. to a **covered vehicle** for which Uninsured Motorist Property Damage Coverage has been purchased;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

Subject to the Limits of Liability, **we** will also pay for replacement of a **child restraint system** that was in use by a child in a **covered vehicle** during an **accident** for which Uninsured Motorist Property Damage Coverage applies due to the liability of the **owner** or operator of an **uninsured motor vehicle**.

**We** will pay under this Part III only after the limits of liability under all other applicable liability bonds and policies have been exhausted by payment of judgments or settlements. However, this shall not apply if **we** and the **insured person** agree, without arbitration, that the **insured person** has suffered **bodily injury**, death, or **property damage**, and also agree on the amount of damages within the Limit of Liability that the **insured person** is legally entitled to collect under this Part III.

An **insured person** must notify **us** in writing at least thirty (30) days before entering into any settlement with the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, or any liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**. If **we** do this, **you** agree to assign to **us** all rights that **you** have against the **owner** or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**.

### ADDITIONAL DEFINITIONS

When used in this Part III:

1. "**Insured person**" and "**insured persons**" mean:
   a. **you** or a **relative**;
   b. any person **occupying** a **covered vehicle**; and
   c. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a or b above.

16

17

2. "**Non-owned vehicle**" means any **vehicle** that is not **owned** by **you**, a **relative**, or the named insured's non-resident spouse.
3. "**Property damage**" means only physical damage to or destruction of a **covered vehicle**. "**Property damage**" does not include loss of use of a **covered vehicle** resulting from its physical damage or destruction.
4. "**Underinsured motor vehicle**" means a land motor vehicle to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the sum of all applicable limits of liability for **bodily injury** is less than the coverage limit for Uninsured/Underinsured Motorist Bodily Injury Coverage shown on the **Declarations Page**.

   An **underinsured motor vehicle** does not include any vehicle or equipment:
   a. **owned** by **you** or a **relative**;
   b. **owned** by any governmental unit or agency;
   c. operated on rails or crawler treads;
   d. designed mainly for use off public roads, while not on public roads;
   e. while used as a residence or premises;
   f. shown on the **Declarations Page** of this policy;
   g. not required to be registered as a motor vehicle; or
   h. which is an **uninsured motor vehicle**.
5. "**Uninsured motor vehicle**" means a land motor vehicle of any type:
   a. to which no **bodily injury** liability bond or policy applies at the time of the **accident**;
   b. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is or becomes insolvent;

c. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but its limit of liability for **bodily injury** is less than the minimum limit of liability for **bodily injury** specified by the financial responsibility law of the state in which a **covered vehicle** is principally garaged; or
d. that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which strikes, or causes an object to strike:
   (i) **you** or a **relative**;
   (ii) a vehicle that **you** or a **relative** are **occupying**; or
   (iii) a **covered vehicle**;
   provided that the **insured person**, or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (24) hours or as soon as practicable after the **accident**.

An "**uninsured motor vehicle**" does not include any motorized vehicle or equipment:
a. **owned** by **you** or a **relative**, other than a **covered vehicle**;
b. **owned** or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;
c. **owned** by any governmental unit or agency;
d. operated on rails or crawler treads;
e. designed mainly for use off public roads, while not on public roads;
f. while being used as a residence or premises;
g. not required to be registered as a motor vehicle; or
h. which is an **underinsured motor vehicle**.

18

19

EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

Coverage under this Part III is not provided for **bodily injury** sustained by any person while using or **occupying**:
1. a **covered vehicle** while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;
2. a **covered vehicle** without the express or implied permission of **you** or a **relative**;
3. a **non-owned vehicle** without the express or implied permission of the **owner**; or
4. a motorized vehicle or device of any type designed to be operated on the public roads that is **owned** by **you** or a **relative**, other than a **covered vehicle**.

Coverage under this Part III is not provided for **property damage**:
1. to a **covered vehicle** while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;
2. to a **covered vehicle** while being used or driven by a person while employed or engaged in the **business** of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using a **covered vehicle**;
3. to a **covered vehicle** resulting from any prearranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

4. to a **covered vehicle** due to a nuclear reaction or radiation;
5. to a **covered vehicle** for which insurance is afforded under a nuclear energy liability insurance contract;
6. to a trailer;
7. which is not caused by the actual physical contact of an **uninsured motor vehicle** with the **covered vehicle**; or
8. if the **owner** or operator of the at-fault **uninsured motor vehicle** cannot be identified.

Coverage under this Part III will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
1. workers' compensation law; or
2. disability benefits law.

LIMITS OF LIABILITY

The limit of liability shown on the **Declarations Page** for the coverages under this Part III is the most **we** will pay regardless of the number of:
1. claims made;
2. **covered vehicles**;
3. trailers shown on the **Declarations Page**;
4. **insured persons**;
5. lawsuits brought;
6. vehicles involved in an **accident**; or
7. premiums paid.

If the **Declarations Page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one **accident**. However, without changing this total "each accident" limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If **your Declarations Page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person;

20

21

2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**; and

3. the amount shown for "property damage" is the most **we** will pay for the aggregate of all **property damage** caused by any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** of another or from witnessing the **bodily injury** of another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The Limit of Liability under this Part III for **property damage** to a **covered vehicle** arising out of one **accident** is the lowest of:

1. the actual cash value of the **covered vehicle** at the time of the **accident**, reduced by the deductible shown on the **Declarations Page**, and by its salvage value if the **covered vehicle** is more than eight (8) years old and **we** allow **you** or the **owner** to retain the salvage;

2. the amount necessary to replace the **covered vehicle**, reduced by the deductible shown on the **Declarations Page**, and by its salvage value if the **covered vehicle** is more than eight (8) years old and **we** allow **you** or the **owner** to retain the salvage;

3. the amount necessary to repair the **covered vehicle** to its pre-loss condition, reduced by the deductible shown on the **Declarations Page**; or

4. any limit of liability shown on the **Declarations Page** for "property damage" under this Part III, reduced by the salvage value of the **covered vehicle** if the **covered vehicle** is more than

eight (8) years old and **we** allow **you** or the **owner** to retain the salvage.

Payments for **property damage** under this Part III are subject to the following provisions:

1. no more than one deductible shall be applied to any one **accident**; and

2. an adjustment for depreciation or physical condition, which may also be referred to as betterment, wear and tear, or prior damage, will be made in determining the Limit of Liability at the time of the **accident**.

The Limits of Liability for **bodily injury** under this Part III shall be reduced by all sums:

1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I - Liability To Others; and

2. paid or payable because of **bodily injury** under any workers' compensation law.

The Limits of Liability for **property damage** under this Part III shall be reduced by all sums paid because of **property damage**:

a. by or on behalf of any persons or organizations who may be legally responsible; and

b. under Part IV - Damage To A Vehicle.

Any payment made to a person under this Part III shall reduce any amount that the person is entitled to recover under Part I - Liability To Others.

No one will be entitled to duplicate payments for the same elements of damages.

Any judgment or settlement for damages against an operator or **owner** of an **uninsured motor vehicle** which arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured motorist coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** Limit of Liability bears to the total of all available coverage limits. However, any insurance **we** provide shall be excess over any other uninsured or underinsured motorist coverage, except for **bodily injury** to **you** or a **relative** when **occupying** a **covered vehicle**.

**We** will not pay for any damages which would duplicate any payment made for damages under other insurance.

## ARBITRATION

If **we** and an **insured person** cannot agree on:
1.  the legal liability of the operator or **owner** of an **uninsured motor vehicle**; or
2.  the amount of the damages sustained by the **insured person**;

this will be determined by arbitration if **we** or the **insured person** make a written demand for arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the **accident** occurred.

If a written demand for arbitration is made, each party shall select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within forty-five (45) days, then either party may request that the arbitration be submitted to the American Arbitration Association, or on joint application by the **insured person** and **us**, the third arbitrator may be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally. In the event the arbitrators award reasonable arbitration costs, fees or expenses, **we** will pay only that portion of such awarded costs, fees or expenses as is necessary to prevent the amount available under this policy for payment of compensatory damages awarded by the arbitrators from being reduced to an amount less than the minimum amount required under the Illinois Vehicle Code and the Illinois Insurance Code, as amended.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Rules of procedure and evidence will apply according to Illinois law.

A decision agreed to by two of the arbitrators will be binding with respect to a determination of:
1.  the legal liability of the operator or **owner** of an **uninsured motor vehicle**; and
2.  the amount of the damages sustained by the **insured person**.

The arbitrators shall have no authority to award compensatory damages in an amount in excess of the limit of liability. The decision of the arbitrators is binding only if the amount of the award does not exceed the minimum limit of liability specified by the financial responsibility laws of the state listed on **your** application as **your** residence. If the award of the arbitrators for damages caused by an **uninsured motor vehicle** exceeds this minimum limit, either party may demand the right to a trial. This demand must be made in writing within sixty (60) days of the arbitrators' decision. If the demand is not made within sixty (60) days, the amount of damages agreed to by the arbitrators will be binding.

## PART IV - DAMAGE TO A VEHICLE

### INSURING AGREEMENT - COLLISION COVERAGE

If **you** pay the premium for Collision Coverage, **we** will pay for **loss** to a:
1. **covered vehicle** for which Collision Coverage has been purchased;
2. **non-owned vehicle**; or
3. **trailer**;

when it overturns or is in a collision with another object, subject to the Limits of Liability.

If **you** pay the premium for Collision Coverage, **we** will also pay for replacement of a **child restraint system** in use by a child in a **covered vehicle** or in a **non-owned vehicle** that collides with another object or overturns, subject to the Limits of Liability.

### INSURING AGREEMENT - COMPREHENSIVE COVERAGE

If **you** pay the premium for Comprehensive Coverage, **we** will pay for comprehensive **loss** to a:
1. **covered vehicle** for which Comprehensive Coverage has been purchased;
2. **non-owned vehicle**; or
3. **trailer**;

subject to the Limits of Liability.

A comprehensive **loss** is a **loss** to a **covered vehicle**, **non-owned vehicle**, or **trailer**, other than a **loss** covered under Collision Coverage, including, but not limited to, any of the following:
1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny; or
8. windstorm, hail, water, or flood.

26

If **you** pay the premium for Comprehensive Coverage under this policy, **we** will pay **you** up to the greater of:
1. $20 each day for thirty (30) days; or
2. any higher limit of liability purchased as Rental Reimbursement Coverage that is shown on the **Declarations Page**;

for transportation expenses incurred by **you** if a **covered vehicle** to which Comprehensive Coverage applies is stolen, or for loss of use damages that **you** are legally liable to pay if a **non-owned vehicle** is stolen.

Transportation expenses and loss of use damages coverage begins forty-eight (48) hours after **you** report the theft to **us**, and ends the earliest of:
1. when the **covered vehicle** or **non-owned vehicle** has been recovered and returned to **you** or its **owner**;
2. when the **covered vehicle** or **non-owned vehicle** has been recovered and repaired;
3. when the **covered vehicle** or **non-owned vehicle** has been replaced; or
4. seventy-two (72) hours after **we** make an offer to pay the applicable limit of liability under this Part IV if the **covered vehicle** or **non-owned vehicle** is deemed by **us** to be a **total loss** or unrecoverable.

**You** must provide **us** written proof of **your** transportation expenses and loss of use damages.

If **we** can pay the **loss** under either Comprehensive Coverage or Collision Coverage, **we** will pay under the coverage where **you** collect the most.

### INSURING AGREEMENT - CUSTOM PARTS OR EQUIPMENT COVERAGE & ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Comprehensive Coverage or Collision Coverage, **we** will pay for theft of, or

27

damage to, **custom parts or equipment** resulting from any **loss** for which Comprehensive Coverage or Collision Coverage is provided under the terms of this policy. All payments for **loss** to **custom parts or equipment** shall be reduced by the applicable deductible, but only one deductible may be applied to any one **loss** in an **accident** which is covered by this Part IV. However, Additional Custom Parts or Equipment Coverage applies only to **custom parts or equipment** on a **covered vehicle** for which this coverage has been purchased.

The limit of liability for **loss** to **custom parts or equipment** is the lowest of:

1. the actual cash value of such **custom parts or equipment**, reduced by the applicable deductible, and by its salvage value if **you** or the **owner** retain the salvage;

2. the amount necessary to repair such **custom parts or equipment**, reduced by the applicable deductible;

3. the amount necessary to replace such **custom parts or equipment**, reduced by the applicable deductible, and reduced by its salvage value if **you** or the **owner** retain the salvage; or

4. the limit of:
   a. $1,000 if **you** did not purchase Additional Custom Parts or Equipment Coverage; or
   b. if **you** have purchased Additional Custom Parts or Equipment Coverage ("ACPE"), $1,000 added to the amount of ACPE **you** purchased. However, the Limit of Liability for **custom parts or equipment** shall not exceed the declared value of all **custom parts or equipment** on the **covered vehicle**.

**We** will reduce the amount of the **loss** to **custom parts or equipment** by its salvage value if **you** or the **owner** retain the salvage.

Coverage for **custom parts or equipment** shall not cause **our** limit of liability for **loss** to a **vehicle** under this Part IV to be increased to an amount in excess of:

a. the actual cash value of the **vehicle**, including its **custom parts or equipment**; or

b. any applicable Limits of Liability or Stated Amount Vehicle Coverage elected by **you**.

## ADDITIONAL DEFINITIONS

When used in this Part IV:

1. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements, and changes, other than those which are available as standard or optional manufacturer installed, equipment, devices, accessories, enhancements, and changes, which:
   a. are permanently installed or attached; and
   b. alter the appearance or performance of a **vehicle**.

   This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are available as standard or optional equipment and devices from the manufacturer, that are permanently installed in a **covered vehicle** or **non-owned vehicle** using bolts or brackets, including slide-out brackets.

2. "**Non-owned vehicle**" means any **vehicle** that is not **owned** by **you**, a **relative**, a resident of **your** household, or the spouse of the named insured even if not residing in the same household as the named insured, while in the custody of, or being operated by, **you** or a **relative** with the express or implied permission of the **owner**.

3. "**Total loss**" means:
   a. the theft of the **vehicle** if the **vehicle** is not recovered within thirty (30) days; or

b. any other **loss** to the **vehicle** that is payable under this Part IV if the cost to repair the damage (including parts and labor), when combined with the salvage value, exceeds the actual cash value of the **vehicle** at the time of the **loss**.

4. "Trailer" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by a land motor vehicle, that is:

   a. **owned** by **you**;
   b. not **owned** by **you**, while being towed by a **covered vehicle**; or
   c. shown on the **Declarations Page**;

   but that is not used:

   a. for commercial or **business** purposes;
   b. as a primary residence;
   c. as a premises for office, store or display purposes; or
   d. as a passenger conveyance.

## EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV does not apply for **loss**:

1. to a **covered vehicle**, **non-owned vehicle**, or **trailer**, while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools;

2. to any **covered vehicle** or **trailer** while it is leased or rented to others;

3. to a **non-owned vehicle** or **trailer**, other than one rented by **you** or a **relative**, if being maintained or used by a person while employed or engaged in any **business** not described in the next exclusion. This exclusion does not apply to the use by **you** or any **relative** of a **non-owned vehicle** that is a private passenger vehicle or **trailer**;

4. to a **non-owned vehicle** or **trailer** while being used or driven by a person while employed or engaged in the **business** of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles;

5. to a **covered vehicle**, **non-owned vehicle**, or **trailer**, resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

6. to a **covered vehicle**, **non-owned vehicle**, or **trailer**, due to a nuclear reaction or radiation;

7. to a **covered vehicle**, **non-owned vehicle**, or **trailer**, for which insurance is afforded under a nuclear energy liability insurance contract;

8. due to destruction or confiscation by governmental or civil authorities of a **covered vehicle**, **non-owned vehicle**, or **trailer**, because **you** or any **relative** engaged in illegal activities;

9. to a **covered vehicle**, **non-owned vehicle**, or **trailer**, caused by an intentional act by **you**, a **relative**, or the **owner** of the **non-owned vehicle** or **trailer**, or at the direction of **you**, a **relative**, or the **owner** of the **non-owned vehicle** or **trailer**. However, this exclusion does not apply to an innocent co-insured's legal interest in the **covered vehicle** if:

   a. the innocent co-insured did not cooperate in or contribute to the creation of the **loss**;
   b. the **loss** arose out of a pattern of criminal domestic violence; and
   c. the perpetrator of the **loss** is criminally prosecuted for the act causing the **loss**;

10. to a **covered vehicle**, **non-owned vehicle**, or **trailer**, that is due and confined to:

    a. wear and tear;
    b. freezing;
    c. mechanical or electrical breakdown or failure; or
    d. road damage to tires.

    This exclusion does not apply if the damage results from the theft of a **covered vehicle**, **non-owned vehicle**, or **trailer**;

11. due to theft or conversion of a **covered vehicle**, **non-owned vehicle**, or **trailer**:
    a. by **you**, a **relative**, or any resident of **your** household;
    b. prior to its delivery to **you** or a **relative**; or
    c. while in the care, custody, or control of anyone engaged in the **business** of selling the **vehicle** or **trailer**;

12. to equipment, devices, accessories, and any other personal effects which are not permanently installed or attached by brackets or bolts. This includes, but is not limited to:
    a. tapes, compact discs, cassettes, and other recording or recorded media;
    b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, or other recording or recorded media;
    c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
    d. CB radios, telephones, two-way mobile radios, or televisions;

13. to **custom parts or equipment** in excess of the applicable Limits of Liability; or

14. to a **covered vehicle**, **non-owned vehicle**, or **trailer**, for diminution of value.

**LIMITS OF LIABILITY**

1. The limit of liability for **loss** to a **covered vehicle**, **non-owned vehicle**, or **trailer** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the **loss**, reduced by the applicable deductible shown on the **Declarations Page**, and by its salvage value if the **vehicle** or **trailer** is more than eight (8) years old and **we** allow **you** or the **owner** to retain the salvage;
   b. the amount necessary to replace the stolen or damaged property, reduced by

the applicable deductible shown on the **Declarations Page**, and by its salvage value if the **vehicle** or **trailer** is more than eight (8) years old and **we** allow **you** or the **owner** to retain the salvage;
   c. the amount necessary to repair the damaged property to its pre-loss condition, reduced by the applicable deductible shown on the **Declarations Page**; or
   d. any applicable Limits of Liability or Stated Amount Vehicle Coverage elected by **you**, reduced by its salvage value if the **vehicle** or **trailer** is more than eight (8) years old and **we** allow **you** or the **owner** to retain the salvage.

However, if the **loss** is to a **trailer**:
   a. the most **we** will pay for **loss** to a **trailer** that is shown on the **Declarations Page** is the limit of liability shown on the **Declarations Page** for the trailer sustaining the **loss**; and
   b. the most **we** will pay for **loss** to any other **trailer** is $500.

2. Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, Custom Parts or Equipment Coverage and Additional Custom Parts or Equipment Coverage are subject to the following provisions:
   a. no more than one deductible shall be applied to any one covered **loss**;
   b. if coverage applies to a **non-owned vehicle**, **we** will provide the broadest coverage applicable to any **vehicle** shown on the **Declarations Page**. However, the highest deductible on any **covered vehicle** shall apply;
   c. if Stated Amount Vehicle Coverage is elected by **you**, the stated amount is the most **we** will pay for all **loss** to a **covered vehicle**, including its **custom parts or equipment**;
   d. an adjustment for depreciation or physical condition, which may also be referred

to as betterment, wear and tear, or prior damage, will be made in determining the Limits of Liability;

e.  in determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

(i)  shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

(ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

(a)  original manufacturer parts or equipment; and

(b)  nonoriginal manufacturer parts or equipment;

f.  the actual cash value is determined by the market value, age and condition of the **vehicle** at the time the **loss** occurs; and

g.  duplicate recovery for the same elements of damages is not permitted.

3.  If more than one **vehicle** is shown on **your Declarations Page**, coverage will be provided as specified on the **Declarations Page** as to each **vehicle**.

4.  The amount of damages which a person is entitled to recover under this Part IV for a **loss** to a **vehicle** shall be reduced by any amount paid for **property damage** to that **vehicle** under Part III - Uninsured/Underinsured Motorist Coverage.

5.  No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

6.  If two or more deductibles apply to any one covered **loss**, only the lowest deductible will apply.

34

## INSURING AGREEMENT - RENTAL REIMBURSEMENT COVERAGE

Subject to the limits of liability, if **you** pay the premium for Rental Reimbursement Coverage, **we** will reimburse rental charges incurred when **you** rent a **vehicle** from a rental agency or vehicle repair shop due to a **loss**:

1.  to a **covered vehicle** for which Rental Reimbursement Coverage has been purchased; and

2.  for which Comprehensive Coverage or Collision Coverage applies.

**Our** limits of liability are the amount and the number of days shown on the **Declarations Page**.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses shall apply.

Rental charges will be reimbursed beginning:

1.  when the **covered vehicle** cannot be driven due to a **loss**; or

2.  if the **covered vehicle** can be driven, when **you** deliver the **covered vehicle** to a vehicle repair shop for repairs due to the **loss**;

and ending the earliest of when the **covered vehicle** has been:

1.  returned to **you**;

2.  repaired;

3.  replaced; or

4.  if the **covered vehicle** is deemed by **us** to be a **total loss**, seventy-two (72) hours after **we** make an offer to pay the applicable limit of liability under this Part IV.

**You** must provide **us** written proof of **your** rental charges. Duplicate recovery for the same elements of damages is not permitted under this policy.

35

## INSURING AGREEMENT - LIMITED LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for Limited Loan/Lease Payoff Coverage for a **covered vehicle** and the **covered vehicle** for which this coverage has been purchased sustains a **total loss**, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:

1. the actual cash value of the **covered vehicle** at the time of the **total loss** reduced by the applicable deductible and by its salvage value if **you** or the **owner** retain the salvage; and
2. any greater amount the **owner** of the **covered vehicle** is legally obligated to pay under a written loan or lease agreement to which the **covered vehicle** is subject at the time of the **total loss**, reduced by:
   a. unpaid finance charges or refunds due to the **owner** for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the **owner** for extended warranties;
   d. charges for credit insurance or refunds due to the **owner** for credit insurance;
   e. past due payments and charges for past due payments;
   f. collection or repossession expenses; and
   g. its salvage value if **you** retain the salvage.

However, **our** payment under this Limited Loan/Lease Payoff Coverage shall not exceed twenty-five percent (25%) of the actual cash value of the **covered vehicle** at the time of the **total loss**.

## PAYMENT OF LOSS

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **Declarations Page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value. **We** may settle any **loss** with **you** or the **owner** or lienholder of the property.

36

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYEE AGREEMENT

Payment under this Part IV for a **total loss** to a **covered vehicle** will be made according to **your** interest and the interest of any Loss Payee or lienholder shown on the **Declarations Page** or designated by **you**. Payment may be made to both jointly, or separately, at **our** discretion. **We** may make payment for a partial **loss** covered under this Part IV directly to the repair facility with **your** consent.

Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of **you** or a **relative**, or where the **loss** is otherwise not covered under the terms of this policy, the Loss Payee or lienholder's interest will not be protected.

**We** will be entitled to the Loss Payee or lienholder's rights of recovery, to the extent of **our** payment to the Loss Payee or lienholder.

## OTHER INSURANCE

If there is other applicable insurance, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable limits of liability. However, any insurance that **we** provide for a **vehicle** other than a **covered vehicle**, or for a **trailer** other than a **trailer** shown on the **Declarations Page**, will be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by, to, or through the **owner** of the **non-owned vehicle** or **trailer**; and
2. any other applicable physical damage insurance.

37

## APPRAISAL

If **we** cannot agree with **you** on the amount of a **loss**, then **we** or **you** may demand an appraisal of the **loss**. If a demand for an appraisal is made, each party shall appoint a competent and impartial appraiser. The appraisers will determine the amount of **loss**. If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within fifteen (15) days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of **loss**. The amount of **loss** agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. Payment of the umpire and all other expenses of the appraisal will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

### PART V - ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for Roadside Assistance Coverage, **we** will pay for **our** authorized service representative to provide:
1. towing of a **covered disabled vehicle** to the nearest qualified repair facility; and
2. labor on a **covered disabled vehicle** at the place of disablement;
which is necessary due to a **covered emergency**.

### ADDITIONAL DEFINITIONS

When used in this Part V:
1. "**Covered disabled vehicle**" means a disabled **covered vehicle**.

38

2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand, within 100 feet of a road or highway.

### EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V does not apply to:
1. parts, replacement keys, fluid, lubricants, or fuel;
2. installation of products or material not related to the disablement;
3. labor not related to the disablement;
4. labor on a **covered disabled vehicle** for any time period in excess of sixty (60) minutes per disablement;
5. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
6. assistance with jacks, levelers, airbags, or awnings;
7. towing from a service station, garage, or repair shop;
8. labor or repair work performed at a service station, garage, or repair shop;
9. vehicle storage charges;
10. a second tow for a single disablement;
11. disablement that occurs on roads not regularly maintained, including sand beaches, open fields, and areas designated as not passable due to construction;
12. mounting or removing of snow tires or chains;
13. tire repair;

39

14. repeated service calls for a **covered disabled vehicle** in need of routine maintenance or repair;
15. disablement that results from a willful act or action by the operator of a **covered disabled vehicle**;
16. disablement that is not the result of a **covered emergency**;
17. disablement that results from the use of intoxicants or narcotics; or
18. a trailer.

**UNAUTHORIZED SERVICE PROVIDER**

When service is rendered by a provider other than **our** authorized service representative, **we** will only pay reasonable charges, as determined by **us**, for:
1. towing of a **covered disabled vehicle** to the nearest qualified repair facility; and
2. labor on a **covered disabled vehicle** at the place of disablement;

which is necessary due to a **covered emergency**.

### GENERAL PROVISIONS

**POLICY PERIOD AND TERRITORY**

This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **Declarations Page** and which occur within any state, territory, or possession of the United States of America, or any province or territory of Canada, or while a **covered vehicle**, non-owned vehicle, or trailer is being transported between their ports.

**POLICY CHANGES**

This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **Declarations Page**, as amended, and endorsements to this policy issued by **us** contain

all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**.

The premium for each **vehicle** is based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **we** may adjust **your** premium during the policy period, or take other appropriate action. To properly insure **your vehicle**, **you** must promptly notify **us** when:
1. **you** change **your** address;
2. any resident operators are added or deleted; or
3. **you** acquire an additional or replacement **vehicle**.

Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you** or a **relative** obtaining a driver's license or operator's permit, or changes in:
1. the number, type, or use classification of **covered vehicles**;
2. operators using **covered vehicles**;
3. an operator's marital status;
4. the place of principal garaging of any **covered vehicle**;
5. coverage, deductibles, or limits of liability; or
6. rating territory or discount eligibility.

**TERMS OF POLICY CONFORMED TO STATUTES**

If any provision of this policy fails to conform with the legal requirements of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform with such legal requirements. All other provisions shall be given full force and effect. Any disputes as to the

40

41

coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

## VEHICLES WITH COMPREHENSIVE COVERAGE AND/OR COLLISION COVERAGE ONLY

If **you** purchase only:
1. Comprehensive Coverage;
2. Collision Coverage; or
3. Comprehensive Coverage and Collision Coverage;

for a **covered vehicle**, no other coverage will be provided under this policy with respect to the ownership, maintenance or use of that **covered vehicle**, or any replacement for that **covered vehicle**, until after **you** have asked **us** to add other coverage.

## TRANSFER

This policy may not be transferred to another person without **our** written consent. If a named insured dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy if **you** or an insured person:
1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. **We** may void this policy due to fraud, misrepresentation, or an incorrect statement of a material fact in the applica-

tion, even after the occurrence of an **accident** or **loss**. This means that **we** will not be liable for any claims or damages which would otherwise be covered.

**We** may deny coverage for an **accident** or **loss** if **you** or an insured person have knowingly concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

**We** will not void this policy due to a misrepresentation of a material fact or circumstance in the application if this policy has been in effect for one (1) year or one (1) policy term, whichever is less.

## PAYMENT OF PREMIUM

If **your** initial premium payment is by check, draft, or any remittance other than cash, coverage under this policy is conditioned upon the check, draft, or remittance being honored upon presentment to the bank or other financial institution. If the check, draft, or remittance is not honored upon presentment, this policy may, at **our** option, be deemed void from its inception. This means that **we** will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

A charge may be added to **your** account if:
1. **you** tender a check, draft, remittance or other method of payment to **us** for any full or partial payment of **your** premium, other than **your** initial payment, and the check, draft, remittance or other method of payment is returned to **us** or refused because of insufficient funds, a closed account, or a stop payment order; or
2. **your** premium payment is received after the due date but prior to cancellation.

## CANCELLATION

**You** may cancel this policy by calling or writing **us**, and stating the future date that **you** wish the cancellation to be effective.

**We** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **Declarations Page** at the last known address appearing in **our** records. If **we** cancel this policy at any time due to nonpayment of premium, notice of cancellation will be mailed at least ten (10) days before the effective date of cancellation. Notice of cancellation due to any reason other than nonpayment of premium will be mailed at least thirty (30) days before the effective date of cancellation.

**We** may cancel this policy for any reason within the first sixty (60) days of the initial policy period.

After this policy is in effect for more than sixty (60) days, or if this is a renewal or continuation policy, **we** may only cancel for one or more of the following reasons:

1. **you** do not pay the required premium for this policy when due;
2. misrepresentation by **you** of any material fact in the procurement or renewal of this policy;
3. an insured person violated any of the terms or conditions of the policy;
4. the named insured failed to fully disclose motor vehicle **accidents** and moving traffic violations for the preceding thirty-six (36) months;
5. an insured person made a false or fraudulent claim or knowingly aided or abetted another in the presentation of such a claim;
6. the named insured, or any operator who either resides in the same household or customarily operates a **covered vehicle:**
   a. has had a driver's license under suspension or revocation within the twelve (12) months prior to the notice of cancellation;
   b. is or becomes subject to epilepsy or heart attacks, and such individual does not produce a certificate from a physician testifying to the person's unqualified ability to operate a motor vehicle safely;
   c. has:
      (i) an accident record;
      (ii) a criminal or traffic conviction record; or
      (iii) a physical or mental condition which is such that the person's operation of a **vehicle** might endanger the public safety;
   d. has been addicted to the use of narcotics or other drugs within the thirty-six (36) months prior to the notice of cancellation;
   e. during the thirty-six (36) months immediately preceding the notice of cancellation has been convicted of, or forfeited bail for:
      (i) any felony;
      (ii) criminal negligence resulting in death;
      (iii) homicide or assault arising out of the operation of a motor vehicle;
      (iv) operating a motor vehicle while in an intoxicated condition or while under the influence of drugs;
      (v) being intoxicated while in, or about, a **vehicle**, or while having custody of a **vehicle**;
      (vi) leaving the scene of an **accident** without stopping to report;
      (vii) theft or unlawful taking of a motor vehicle; or
      (viii) making false statements in an application for an operator's or chauffeur's license; or
   f. within the twelve (12) months immediately preceding the notice of cancellation has been convicted of, or forfeited bail for:
      (i) three or more violations of any law, ordinance or regulation limiting the speed of motor vehicles; or

(ii) any of the provisions of the motor vehicle laws of any state, violation of which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or different offenses;

7. the **covered vehicle** is:
   a. so mechanically defective that its operation might endanger public safety;
   b. used in carrying passengers for hire or compensation. However, this shall not apply to a shared-expense car pool;
   c. used in the **business** of transportation of flammables or explosives;
   d. an authorized emergency vehicle;
   e. changed in shape or condition during the policy period so as to increase the risk substantially; or
   f. subject to an inspection by law and has not been inspected or, if inspected, has failed to qualify;

8. **your** place of residence or the state of registration or license of a **covered vehicle** is changed to a state or country in which **we** do not accept applications for the insurance provided by this policy; or

9. any other reason specified by statute.

If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all **vehicles**.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

Any refund due will be computed on a daily pro rata basis.

## NONRENEWAL

If **we** decide not to renew or continue this policy, **we** will mail notice of nonrenewal to the named insured shown on the **Declarations Page** at the last known address appearing in **our** records. Notice will be mailed at least thirty (30) days before the end of the policy period.

After this policy has been in effect or renewed for five (5) or more years, **we** shall not exercise **our** right of nonrenewal unless:
1. there exists one or more of the grounds for cancellation, as set forth above as reasons for cancellation after a policy is in effect for more than sixty (60) days; and
2. **we** mail notice to **you** at least sixty (60) days before the end of the policy period.

## PROOF OF NOTICE

Proof of mailing of any notice will be sufficient proof of notice.

## AUTOMATIC TERMINATION

Coverage for a **covered vehicle** shall terminate automatically:
1. when a person other than **you** or a **relative** becomes the **owner** of the **vehicle**; or
2. on the effective date of any other motor vehicle insurance policy covering that **vehicle**.

Comprehensive Coverage and Collision Coverage in excess of $500 for **loss** to a trailer shown on the **Declarations Page** shall terminate automatically when a person other than **you** or a **relative** becomes the **owner** of the trailer.

## COVERAGE CHANGES

If **we** make a change which broadens a coverage **you** have under this edition of **your** policy, without additional charge, **you** will receive the

broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy. Any lawsuit against **us** by **you**, a **relative**, or any other insured person following an **accident**, or an alleged breach of **our** obligations under this policy, must be commenced within the time period set forth as the bodily injury statute of limitations in the laws of the state listed in **our** records as **your** principal address. However, this time limitation for the commencement of a lawsuit against **us** is extended from the time an insured person notifies **us** of the **loss** until **we** formally deny coverage.

**We** may not be sued for payment under Part I - Liability To Others until the obligation of an insured person to pay is finally determined either by final judgment against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

In the event of any payment under Part III - Uninsured/Underinsured Motorist Coverage of this policy, **we** are entitled to all the rights of recovery that an **insured person** under Part III - Uninsured/Underinsured Motorist Coverage, to whom payment was made, has against the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**. In the event of any other payment under this policy, **we** are entitled to all the rights of recovery that the insured person to whom payment was made has against another. That insured person must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after an **accident** or **loss** to prejudice **our** rights.

However, **we** may not assert rights of recovery against:

1. any person who was using a **covered vehicle** with **your** express or implied permission for any payment made under Part IV - Damage To A Vehicle; or

2. the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, if the **insured person** under Part III - Uninsured/Underinsured Motorist Coverage provides **us** with written notice thirty (30) days prior to entering into a settlement that an offer of settlement has been made by, or on behalf of, the **owner** or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, and **we** do not elect to pay to the **insured person** an amount equal to the amount offered in full settlement by, or on behalf of, the **owner** or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**.

When an insured person has been paid by **us** under this policy and also recovers from another person, entity, or organization, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment.

If recovery is made by an insured person under this policy from a responsible person, entity, or organization without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured shall be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy.

## CONSUMER HOTLINE

**We** have established a Consumer Hotline for **your** use. If **we** may provide any assistance, call **us** toll-free at 1-800-PROGRESSIVE℠ or write to **us** at P.O. Box 6949, Cleveland, Ohio 44101-9871. You may also contact the Illinois Department of Insurance, Public Service Division, at 320 West Washington Street, Springfield, Illinois 62767.

## NAMED DRIVER EXCLUSION

If **you** have asked **us** to exclude any person from coverage under this policy, then **we** will not provide coverage for any claim arising from an **accident** or **loss** involving a motorized vehicle being operated by that excluded person. THIS INCLUDES ANY CLAIM FOR DAMAGES MADE AGAINST **YOU**, A **RELATIVE**, OR ANY OTHER PERSON OR ORGANIZATION THAT IS VICARIOUSLY LIABLE FOR AN **ACCIDENT** ARISING OUT OF THE OPERATION OF A MOTORIZED VEHICLE BY THE EXCLUDED DRIVER.

50

## NAMED OPERATOR - NON-OWNED VEHICLE COVERAGE

If **you** elect Named Operator - Non-Owned Vehicle Coverage, **you** agree with **us** that this policy is amended as follows:

1.  **GENERAL DEFINITIONS**

    a.  The general policy definition of "**you**" and "**your**" is deleted and replaced by the following:

    "**You**" and "**your**" mean the person shown as the named insured on the **Declarations Page**.

    b.  The general policy definition of "**covered vehicle**" is deleted and no coverage is provided with respect to a **covered vehicle** under this policy.

2.  **PART I - LIABILITY TO OTHERS**

    ADDITIONAL DEFINITIONS: When used in Part I, the definition of "**insured person**" and "**insured persons**" is deleted and replaced by the following:

    "**Insured person**" and "**insured persons**" mean:
    a.  **you** when operating or using a **vehicle**, other than a **vehicle owned** by **you** or a **relative**, with the express or implied permission of the **owner**; and
    b.  any person or organization with respect only to vicarious liability for an **accident** arising out of the use of a **non-owned vehicle** by **you** with the express or implied permission of the **owner**.

51

3.  **PART II - MEDICA . PAYMENTS, PERSON-
    AL INJURY PROTECTION, or NO-FAULT
    MEDICAL COVERAGE**

    ADDITIONAL DEFINITIONS: When used in
    Part II, the definition of "**insured person**"
    and "**insured persons**" is deleted and
    replaced by the following:

    "**Insured person**" and "**insured persons**"
    mean **you**:
    a.  while **occupying** any **vehicle**, other
        than a **vehicle owned** by **you**; or
    b.  when struck by a motor vehicle or trailer
        while not **occupying** a motor vehicle.

4.  **PART III - UNINSURED/UNDERINSURED
    MOTORIST COVERAGE**

    ADDITIONAL DEFINITIONS: When used in
    Part III, the Additional Definition of "**insured
    person**" and "**insured persons**" is deleted
    and replaced by the following:

    "**Insured person**" and "**insured persons**"
    mean:
    a.  **you**; and
    b.  any person who is entitled to recover
        damages covered by Part III because of
        **bodily injury** to **you**.

    Uninsured Motorist Property Damage Cov-
    erage is deleted.

52



*9608 12 0701*



## Amoni Law
### Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506     *Also Licensed in Missouri & California

June 18, 2004

Via certified U.S. mail

The Progressive Corporation
Progressive Casualty Insurance Company
6300 Wilson Mills Road
Mayfield Village, Ohio 44143

Progressive Insurance Company
2500 S. Highland Ave., Suite 320
Lombard, IL 60148

RE:     Policy No.:          50014863-4
        Insured:             Jagdish D. Muzumdar
        Date of Loss:        03/26/04

To Whom It May Concern:

I am the attorney for Jagdish D. Muzumdar and I have enclosed a demand for underinsurance motorist arbitration on his behalf pursuant to the above-referenced policy and in regard to the above-referenced car crash. Please send to my Aurora office a certified copy of the above-referenced policy and any and all applicable policies, the declaration sheets of these policies, and the limits of liability of these policies.

I intend to file a claim against the at-fault drivers, Timmothy Gahr and Jerome Gliva. Thus, Mr. Muzumdar's underinsurance motorist arbitration claim may not be ripe yet for resolution. I will be in contact with you upon the resolution of the underlying claims.

If you have any questions, please call me.

Sincerely yours,

AMONI LAW OFFICES, P.C.,

Edward R. Peterka

Enclosures

cc:     Jagdish D. Muzumdar



PLAINTIFF'S
EXHIBIT
2

Telephone: (630) 264.2020          Facsmile: (630) 801.9833          E-Mail: info@amonilaw.com

## DEMAND FOR UNDERINSURED MOTORIST ARBITRATION

To: The Progressive Corporation
Progressive Casualty Insurance Company
6300 Wilson Mills Road
Mayfield Village, Ohio 44143

Progressive Insurance Company
2500 S. Highland Ave., Suite 320
Lombard, IL 60148

RE: Policy No.: 50014863-4
Insured: Jagdish D. Muzumdar
Date of Loss: 03/26/04

See attached Exhibit A, Illinois Traffic Crash Report for further detail

The Insured/Claimant, JAGDISH D. MUZUMDAR, hereby demands arbitration pursuant to the underinsured motorist provisions of the subject policies referenced above. The Claimant's designated arbitrator is John R. Wienold, One N. Constitution Drive, Aurora, IL 60506. Arbitration is hereby demanded in Wheaton, DuPage County, Illinois.

Dated: June 18, 2004

AMONI LAW OFFICES, P.C.

BY: _____
Edward R. Peterka

### AFFIDAVIT OF MAILING

STATE OF ILLINOIS )
) SS
COUNTY OF KANE )

The undersigned, being first duly sworn, on oath deposes and states that he deposited a copy of the foregoing Demand for Underinsured Motorist Arbitration in a U.S. Mail Box, at One North Constitution Drive in Aurora, Kane County, Illinois and by certified mail with United States postage fully prepaid thereon, on **June 18, 2004**, properly and securely sealed and plainly addressed to the person(s) and/or entity(s) listed above.

BY: _____
Edward R. Peterka

Subscribed and sworn to before me on June 18, 2004

BY: _____
Notary Public

Official Seal
Amber L Doherty
Notary Public State of Illinois
My Commission Expires 01/10/07

AMONI LAW OFFICES, P.C.
One North Constitution Drive
Aurora, IL 60506
Telephone: (630) 264-2020
Facsimile: (630) 801-9833

# Magnani & Buck Ltd.

Attorneys at Law
Chicago Bar Association Building
321 South Plymouth Court
Suite 1700
Chicago, Illinois 60604
law@magnanibuck.com

Thomas L. Buck
Ximen J. Januszyk
Elizabeth M. Lauderbach
Peter J. Magnani
Jennifer K. Rawe
Matthew T. Volk

Telephone (312) 294-4800
Facsimile (312) 294-4815

May 18, 2007

Speers Reuland & Cibulskis P.C.
54 West Downers Place
P.O. Box 505
Aurora, IL 606507

        Re:  Muzumdar v. Progressive
             Underinsured Motorist Arbitration Claim
             Our File No.:  2277.4

Dear Ms. Speers:

This letter will serve to confirm that you will be acting as the neutral arbitrator with respect to the coverage issue and under insured motorist arbitration claim entitled Jagdishd Muzumdar v. Progressive Insurance Company, policy number 50014863-4, date of loss March 26, 2004.

Bill Porter, of Chilton Yambert Porter & Young's Geneva office, will be acting as Progressive's attorney. I will be acting as Progressive's arbitrator.

The claimant's attorney is Edward Peterka of Amoni Law Office P.C. The claimant's arbitrator is Mr. Jonathan Carbary of Jonathan L. Carbary Ltd.

The arbitration is scheduled to take place on July 23, 2007 at 10:00 a.m. at your office. We are looking forward to seeing you.



PLAINTIFF'S
EXHIBIT
J

RECEIVED MAY 21 2007

# $\mathcal{A}$moni Law
## Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER

JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506

*Also Licensed in Missouri & California

May 21, 2007

Via U.S. mail

Jonathan L. Carbury
1814 Grandstand Place,
Elgin, IL 60123
Telephone:      (847) 888-0919
Facsimile:      (847) 888-0929

Ximen J. Januszyk
Magnani & Buck, Ltd.
321 S. Plymouth Court, Suite 1700
Chicago, IL  60604
Telephone:      (312) 294-4800
Facsimile:      (312) 294-4815

William Porter
Chilton Yambert Porter & Young
2000 S. Batavia Ave., Second Floor
Geneva, IL 60134
Telephone:      (630) 262-4000
Facsimile:      (630) 262-1144

Robert L. Speers
Speers Reuland & Cibulskis, P.C.
54 W. Downers Place
Aurora, IL 60506
Telephone:      (630) 892-8109
Facsimile:      (630) 264-2727

RE:    <u>Muzumdar v. Progressive</u>
        Underinsured Motorist Arbitration Claim

Dear Counsel,

In follow-up to Ms. Januszyk's May 18, 2007 letter, I am unavailable to arbitrate Dr. Muzumdar's claim on July 23, 2007 as I will be on trial in Cook County. I have better availability in late August 2007. Please let me know of alternate dates for the arbitration hearing in this matter.

Sincerely yours,

AMONI LAW OFFICES, P.C.,

Edward R. Peterka

cc:    Dr. Jagdish Muzumdar



PLAINTIFF'S
EXHIBIT
4

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J YOUNG*
SHARON M PEART
KEN SOLDAT (1957-2006)
MARK A PHEANIS
TODD B TARTER
DANIEL T CROWE
ROBERT J METTS
JAMES A SANTUCCI
ROBERT B HESS
JOSEPH R VALLORI†
P CHAUNCEY CASSIDY
THEODORE C HADLEY
DAVID W ROSEMEYER

*Also admitted in Wisconsin
†Also admitted in Alaska
‡Also admitted in Indiana

2000 S. BATAVIA AVENUE
SECOND FLOOR
GENEVA, ILLINOIS 60134

TELEPHONE (630) 262-4000
FACSIMILE (630) 262-1144

WWW.CYPYLAW.COM

**CHICAGO OFFICE**
150 S. WACKER DRIVE
SUITE 2400
CHICAGO, ILLINOIS 60606

TELEPHONE (312) 460-8000
FACSIMILE (312) 460-8299

**JOLIET OFFICE**
54 N. OTTAWA STREET
SUITE 540
JOLIET, ILLINOIS 60432

TELEPHONE (815) 726-5262
FACSIMILE (815) 726-5562

LAURA M MAUL
JOSEPH W SUBSTALAK
GARRY B ZAK
JAMES V CUSTODIO
PAUL E KRALOVEC
MAKEDONKA BALOSKIT
JEFFREY S GREENBAUM
REBECCA A FOZO
RANDALL R EDGAR
KAREN A HAARSGAARD
RONALD W PAYNE
SHAWN M BILL
KIMBERLY A EMERSON
EDWIN J OLSON
MICHAEL W BLAKE
COURTNEY D CARTER
MARY J PURCELL
JOHN H HOLIONA
MICHAEL F BURNS
JOHN B BROUSSARD
JORDAN D MATYAS
MICHAEL J VALENTINE, JR

KENNETH J GARVEY _Of Counsel_
Writer's Direct Line: (630) 262-3912
E-mail: bporter@cypylaw.com

June 28, 2007

Arbitrator Robert L. Speers
(Via Fax to: 630-~~892-8154~~)
   264-2727

Arbitrator Jonathan L. Carbary
(Via Fax to: 847-888-0929)

Arbitrator Ximen Januszyk
(Via Fax to: 312-294-4815)

Attorney Edward R. Peterka
(Via Fax to: 630-801-9833)

RE:     **Jagdish D. Muzumdar v. Progressive Insurance Company**
        D/Loss:     3/26/04
        Our File:     261.07008

Dear Counselors:

Please allow this to confirm that the arbitration of this matter has been scheduled on October 23, 2007 at 10:00 a.m. at my office located at 2000 South Batavia Avenue, Second Floor, Geneva, Illinois.

Thank you for your assistance in scheduling this matter.

Yours very truly,

Bill Porter

cc:     Leslie Mako,
        Progressive Insurance Company

**PLAINTIFF'S EXHIBIT**

5

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J YOUNG*
SHARON M PHART
KEN SOLDAN (1957-2006)
MARK A PHEANIS
TODD B TARTER
DANIEL I CROWE
ROBERT J METTS
JAMES A SANTUCCI
ROBERT B HESS
JOSEPH R VALLORT†
P CHAUNCEY CASSIDY
THEODORE C HADLEY
DAVID W ROSEMEYER

*Also admitted in Wisconsin
†Also admitted in Alaska
‡Also admitted in Indiana

2000 S. BATAVIA AVENUE
SECOND FLOOR
GENEVA, ILLINOIS 60134

TELEPHONE (630) 262-4000
FACSIMILE (630) 262-1144

WWW.CYPYLAW.COM

**CHICAGO OFFICE**
150 S. WACKER DRIVE
SUITE 2400
CHICAGO, ILLINOIS 60606

TELEPHONE (312) 460-8000
FACSIMILE (312) 460-8299

**JOLIET OFFICE**
54 N. OTTAWA STREET
SUITE 540
JOLIET, ILLINOIS 60432

TELEPHONE (815) 726-5262
FACSIMILE (815) 726-5562

LAURA M MAUL
JOSEPH W SUBSTALAB
GARRY B ZAK
JAMES V CUSTODIO
PAUL E KRALOVEC
MAKEDONKA BALOSKI
JEFFREY S GREENBAUM
REBECCA A FOZO
RANDALL R BIGGAR
KAREN A HAARSGAARD
RONALD W PAYNE
SHAWN M BRE L
KIMBERLY A EMERSON
EDWIN J OLSON
MICHAEL W BLAKE
COURTNEY D CARTER
MARY I PORCELL
JOHN H HOLIONA
MICHAEL F BURNS
JOHN E BROUSSARD
JORDAN D MAIYAS
MICHAEL J VALENTINE, JR

KENNETH F GARVEY *Of Counsel*
Writer's Direct Line: (630) 262-3912
E-mail: bporter@cypylaw.com

July 12, 2007

Arbitrator Robert L. Speers
(Via Fax to: 630-892-8151)

Arbitrator Jonathan L. Carbary
(Via Fax to: 847-888-0929)

Arbitrator Ximen Januszyk
(Via Fax to: 312-294-4815)

Attorney Edward R. Peterka
(Via Fax to: 630-801-9833)

RE: **Jagdish D. Muzumdar v. Progressive Insurance Company**
D/Loss: 3/26/04
Our File: 261.07008

Dear Counselors:

Please allow this to confirm that the arbitration of this matter has been re-scheduled to November 5, 2007 at 10:00 a.m. at my office located at 2000 South Batavia Avenue, Second Floor, Geneva, Illinois.

Thank you for your assistance in scheduling this matter.

Yours very truly,

*[signature]*

Bill Porter

cc:    Leslie Mako,
       Progressive Insurance Company

**PLAINTIFF'S EXHIBIT**
6

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J YOUNG*
SHARON M PEART
KEN SOLDAT (1957-2006)
MARK A PIRANIS
TODD B TARTER
DANIEL I CROWE
ROBERT J METTS
JAMES A SANTUCCI
ROBERT B HESS
JOSEPH R VALLORT†
P CHAUNCEY CASSIDY
THEODORE C HADLEY
DAVID W ROSEMEYER

*Also admitted in Wisconsin
†Also admitted in Alaska
‡Also admitted in Indiana

LAURA M MAHR
JOSEPH W SUISTALAE
GARRY B ZAK
JAMES V CUSTODIO
PAUL E KRALOVEC
MAKEDONKA BALOSKII
JEFFREY S GREENBAUM
REBECCA A FOZO
RANDAL R EDGAR
KAREN A HAARSGAARD
RONALD W PAYNE
SHAWN M BELL
KIMBERLY A EMERSON
EDWIN J OLSON
MICHAEL W BLAKE
COURTNEY D CARTER
MARY L PURCELL
JOHN H HELIONA
MICHAEL F BURNS
JORDAN D MAIYAS
MICHAEL J VALENTINE JR

KENNETH T GARVEY  Of Counsel

2000 S. BATAVIA AVENUE
SECOND FLOOR
GENEVA, ILLINOIS 60134

TELEPHONE (630) 262-4000
FACSIMILE  (630) 262-1188

WWW CYPYLAW COM

**CHICAGO OFFICE**
150 S. WACKER DRIVE
SUITE 2400
CHICAGO, ILLINOIS 60606

TELEPHONE (312) 460-8000
FACSIMILE  (312) 460-8299

**JOLIET OFFICE**
54 N. OTTAWA STREET
SUITE 540
JOLIET, ILLINOIS 60432

TELEPHONE (815) 726-5262
FACSIMILE  (815) 726-5562

Writer's Direct Line: (630) 262-5912
E-mail: bporter@cypylaw.com

July 27, 2007

Via Facsimile to: (630) 801-9833
Edward R. Peterka
Amoni Law Offices, P.C.
One North Constitution Drive
Aurora, IL 60506

RE:     **Jagdish D. Muzumdar v. Progressive Insurance Company**
         D/Loss:      3/26/04
         Our File:    261.07008

Dear Mr. Peterka:

Please be advised that we have scheduled petitioner for an examination with:

|            |                                                                      |
|------------|----------------------------------------------------------------------|
| Doctor:    | Dr. Steven Mather                                                    |
| Address:   | M&M Orthopaedics, Ltd., 4115 Fairview Avenue, Downers Grove, IL 60515 |
| Phone:     | (630) 968-1881                                                      |

The examination is scheduled for:

|        |                                        |
|--------|----------------------------------------|
| Date:  | August 31, 2007                        |
| Time:  | 1:00 pm, please arrive at 12:30 pm     |

Please make sure the petitioner attends this examination.

Thank you for your cooperation.

Very truly yours,

Bill Porter

PLAINTIFF'S
EXHIBIT
7

ky

# $\mathcal{A}$moni Law
## Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER

JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506          *Also Licensed in Missouri & California

August 2, 2007

Via U.S. mail

William Porter
Chilton Yambert Porter & Young
2000 S. Batavia Ave., Second Floor
Geneva, IL 60134
Telephone:      (630) 262-4000
Facsimile:      (630) 262-1144

RE:     Muzumdar v. Progressive
        Underinsured Motorist Arbitration Claim

Dear Mr. Porter,

With regard to this matter, I have enclosed discovery requests to Progressive and a Notice of Deposition of Dr. Steven Mather set for September 14, 2007 at 10:00 a.m. at M&M Orthopaedics, Ltd., 4115 Fairview Avenue, Downers Grove, IL 60515. Also, I have enclosed additional records from Team Health concerning Dr. Muzumdar's wages and patient totals from October 2006 to July 2007 at Silver Cross Hospital.

Finally, I write to confirm that Dr. Muzumdar will attend the examination that is set on August 31, 2007 and I will also attend this examination and I will arrange to have a videographer and court reporter present so that they can record the examination by Dr. Mather.

If you have any questions, please feel free to call me.

Sincerely yours,

AMONI LAW OFFICES, P.C.,

Edward R. Peterka

PLAINTIFF'S
EXHIBIT
8
tables

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J. CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J. YOUNG•
SHARON M. PEART
KEN SO DAY (1957-2006)
MARK A. PHEANIS
TODD D. TARTER
DANIEL T. CROWE
ROBERT J. MEITS
JAMES A. SANTUCCI
ROBERT D. HESS
JOSEPH R. VALLORT†
F. CHAUNCEY CASSIDY
THEODORE C. HADLEY
DAVID W. ROSEMEYER
STEVEN B. NOVY•
STEVEN M. CANTY

KENNETH T. GARVEY  *Of Counsel*

•*Also admitted in Wisconsin*
†*Also admitted in Alaska*
‡*Also admitted in Indiana*
◊*Also admitted in California*

2000 SOUTH BATAVIA AVENUE
SECOND FLOOR
GENEVA, IL 60134

TELEPHONE (630) 262-4000
FACSIMILE (630) 262-1144
www.cypylaw.com

CHICAGO
150 S. Wacker Drive, Suite 2400, Chicago, IL 60606
Telephone (312) 460-8000  Facsimile (312) 460-8299

JOLIET
54 N. Ottawa Street, Suite 540, Joliet, IL 60432
Telephone (815) 726-5262  Facsimile (815) 726-5562

WAUKEGAN
325 Washington Street, Suite 200, Waukegan, IL 60085
Telephone (847) 625-8200 Facsimile (847) 625-8262

LAURA M. MAUL
JOSEPH W. SUBSTAI AK
GARRY H. ZAK
JAMES V. CUSTODIO
PAUL E. KRALOVEC
MAKEDONKA BALOSKIE
JEFFREY S. GREENBAUM
REBECA A. POZO
KAREN A. HAARSGAARD
RONALD W. PAYNE
SHAWN M. BELL
KIMBERLY A. EMERSON
EDWIN J. OLSON
MICHAEL W. BLAKE
COURTNEY D. CARTER
MARY T. PURCELL
JOHN K. BULLONA
MICHAEL F. BURNS
JORDAN D. MAIYAS
MICHAEL J. VALENTINE, JR.
JASON ORLEANS
PAUL E. BRADY
MARK P. DOYLE◊

Writer's Direct Line: (630) 262-3912
E-mail: bporter@cypylaw.com

August 8, 2007

Via Facsimile to:  (630) 801-9833
Edward R. Peterka
Amoni Law Offices, P.C.
One North Constitution Drive
Aurora, IL 60506

RE:  **Jagdish D. Muzumdar v. Progressive Insurance Company**
D/Loss:  3/26/04
Our File:  261.07008

Dear Mr. Peterka:

I am in receipt of your notice setting Dr. Mather's deposition on September 14, 2007. We will not be producing Dr. Mather for a deposition on September 14th. We will arrange for and produce Dr. Mather for deposition after he has rendered his report following his examination of your client on August 31, 2007.

In regard to your indication that you intend to attend the examination on August 31st and bring a court reporter and videographer, please see attached protocol from Dr. Mather related to the IME. As you can see, only the patient will be allowed in the examining room with the physician during the evaluation. Specifically, "attorneys and family members are not permitted in the examining room during the evaluation". I assume that Dr. Mather will not allow a court reporter and videographer to be present.

If you have any questions regarding any of these matters, please give me a call.

Very truly yours,

Bill Porter

PLAINTIFF'S
EXHIBIT
9

ky
attachment

RECEIVED AUG 1 3 2007

# $\mathcal{A}$moni Law
## Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER

JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506          *Also Licensed in Missouri & California

August 13, 2007

Via facsimile and U.S. mail

William Porter
Chilton Yambert Porter & Young
2000 S. Batavia Ave., Second Floor
Geneva, IL 60134
Telephone:      (630) 262-4000
Facsimile:      (630) 262-1144

RE:     Muzumdar v. Progressive Insurance
        Underinsured Motorist Arbitration Claim

Dear Mr. Porter,

In response to your August 13, 2007 letter, I write to confirm that the September 14, 2007 deposition of Dr. Mather will be cancelled. Please provide me with deposition dates prior to October 5, 2007, that are mutually convenient for you and Dr. Mather.

With regard to Dr. Mather's protocol for his examination of Dr. Muzumdar, Dr. Mather will have to yield to Illinois law as Dr. Muzumdar has a **statutory** right to have his attorneys present for his examination pursuant to 735 ILCS 5/2-1003(d). See also In re Marriage of Kutchins, 157 Ill.App.3d 384 (2d Dist. 1987) (party has a right to have his attorney present at the party's mental examination), Klick v. R.D. Werner Co., Inc., 38 Ill.App.3d 575 (1st Dist. 1976) (held to be an abuse of discretion to deny a plaintiff the right to be present at a discovery examination or testing), and K.L. v. Edgar, 945 F.Supp. 167 (N.D. Ill. 1996) (communications by a parties experts with employees of the opposing party were found to violate Code of Professional Responsibility Rule 4.2 which prohibits direct or indirect *ex parte* questioning of a person represented by an attorney). Furthermore, Judge F. Keith Brown and Judge Gene Nottolini have specifically ruled that a Rule 215 examination of a plaintiff may be videotaped and a court reporter may be present to record the exam as long as the plaintiff pays for it. I have attached copies of these orders. These rulings are consistent with the Illinois Supreme Court's ruling in Sarver v. Barrett Ace Hardware, Inc., 63 Ill.2d 454 (1976) which held that it is proper for a court to order that where testing of a product is done the plaintiff should be allowed to have his representative present and the plaintiff should be allowed to take pictures of the process and Illinois Supreme Court Rule 206(a)(2) which specifically allows videotaped depositions of parties (this IME is akin to a deposition since Dr. Muzumdar will be questioned by Dr. Mathers' "clinical technician" at the IME). In addition, Rule 215 examinations are discovery devices and are not medical examinations to which the physician patient privilege attaches. Sarka By and Through Sarka v. Rush Presbyterian-St. Luke's Medical Center, 207 Ill.App.3d 587 (1st Dist. 1990).

Accordingly, based on the above-cited authority, Dr. Muzumdar is entitled to have his attorneys present at this August 31, 2007 IME and for a videographer and court reporter to record this IME. If Dr. Mather intends to perform a proper examination and testing of Dr. Muzumdar, Dr. Mather and Progressive should not be afraid of preserving evidence of this IME for review by other experts and the arbitrators in this case. Moreover, a protective order could address any objections that Dr. Mather may have.

Dr. Muzumdar will submit to an examination by Progressive's physician per the policy but only if such an examination comports with Illinois law as stated above. Thus, pursuant to Rule 201(k), I reiterate my intention of attending Dr. Muzumdar's IME on August 31, 2007, and that I will have a videographer and a court reporter present to record the IME.

I look forward to hearing from you in this regard.

Sincerely yours,

AMONI LAW OFFICES, P.C.,

*Edward R. Peterka*

Edward R. Peterka

Enclosures

> **PLAINTIFF'S EXHIBIT**
> 10
> tabbies

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL COURT
KANE COUNTY, ILLINOIS

GEORGE CHAPMAN and )
JUDY CHAPMAN, )
)
Plaintiffs, )
)
vs. )
)
PERINI BUILDING COMPANY, )
)
Defendant. )
)
_____ )
)
PERINI BUILDING COMPANY, )
)
Third-Party Plaintiff, )
)
vs. )
)
OSWEGO MECHANICAL ERECTORS, INC., )
d/b/a EARLVILLE REBAR CO., )
)
Third-Party Defendant, )

Clerk of the Circuit Court
Kane County, IL

APR 1 5 2003

FILED    017
ENTERED_____

Kane Co. Case No.: 00 LK 615

## RULE 215 ORDER

This cause coming to be heard on Defendant's Motion for a Rule 215 Examination of the Plaintiff, due notice having been given, and the Court being fully advised in the premises, IT IS HEREBY ORDERED:

1.    The Plaintiff shall be subject to only **one** Rule 215 exam to be performed by the Defendant's Rule 215 examiner within _60_ days of the entry of this order at a time agreeable to Plaintiff at the office of the Rule 215 examiner.

2.    The Defendant shall compensate the Plaintiff within 15 days of the Rule 215 exam for any and all lost earnings, mileage at $.30 per mile, parking and gas as submitted by the Plaintiff within 5 days of the Rule 215 exam.

3.    That any and all costs of the Rule 215 exam by the Rule 215 examiner shall be paid by the Defendant and the Plaintiff will not be billed any costs and expenses.

4.    The Defendant's Rule 215 examiner shall be informed of the contents of this order and provided a written copy of it 5 days in advance of the Rule 215 exam.

5.    The attorney and/or representative for the Plaintiff and a _videographer_ ~~court reporter~~ may be present during the entire Rule 215 exam and shall not be prohibited from attending any portion of



the exam.  If the Defendant's attorney requests a copy of the ~~transcript~~ videotape, he shall pay the court reporter the customary transcript fee. *Any videotape made per this order shall only be displayed in connection with this case.*

6.  The Plaintiff shall be permitted to videotape the exam. *at π's expense*

7.  That no invasive test or other medical procedure that involves risk to the Plaintiff be conducted.  This includes but is not limited to blood tests, CAT scan, MRI, thermogram, x-rays, or EMG.

8.  No patient questionnaire or other forms shall be completed by the Plaintiff.

9.  That the exam be solely a physical exam and that all medical history be provided to the Rule 215 examiner ~~in written form.~~ *limited to mechanics of injury & any prior injuries to same body part(s).*

10.  No questions regarding the circumstances of his fall, other than force of impact, shall be asked of the Plaintiff.

11.  At no time shall this Rule 215 exam be referred to as an "independent" or "impartial" or "court-ordered" exam, nor shall the Rule 215 examiner be call the "court's" doctor.

12.  That the Defendant stipulates that Rule 215 examiner is the agent of the Defendant and may be presented as an adverse witness by the Plaintiff if the Defendant does not call him as a witness at trial.

13.  That the Defendant stipulates that if the Defendant does not call the Rule 215 examiner as a witness at trial, the Plaintiff shall be entitled to have former I.P.I Jury Instruction 5.01 given to the jury at trial. *Reserved for future Ruling*

14.  That the Defendant fully comply with the provisions and requirements of Illinois Supreme Court Rule 215(c).

15.  The written Rule 215 report by the Rule 215 examiner shall set forth all of his findings, results of all tests, his diagnosis and bases thereof, and all of his conclusions and opinions and bases therof.  Any additional or supplemental findings, diagnoses, conclusions and opinions and bases thereof shall be made in writing and labeled as supplemental and provided to the Plaintiff's attorneys within 10 days of being formulated and shall comply with any and all of the disclosure deadlines as ordered by the Court.

16.  The Defendant shall provide to the Plaintiff's attorneys 10 days in advance of the Rule 215 examiner's deposition copies of all of the materials, medical records, x-rays or other diagnostic tests, studies and films relied on, reviewed, or used by the Rule 215 examiner, all of the Rule 215 examiner's charges related to this case, ~~the income tax returns of the Rule 215 examiner from the last three years,~~ and all of the correspondence between the Rule 215 examiner and the Defendant's attorney or anyone else in regards to the Rule 215 examiner's involvement in this case. *π may submitted reasonably brief interrogatories as to income to be answered by physician, subject to any objections to be ruled upon by the court upon proper notice & motion.*

2

Date  4/15/03          Enter: F. KEITH BROWN
                              _____
                                          (Judge)


RECEIPT ACKNOWLEDGED: copies rec'd in Court
                         by Counsel

3

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL COURT
KANE COUNTY, ILLINOIS

DANIEL J. MICHELS,                    )
                                      )
                    Plaintiff,        )
                                      )
vs.                                   )        Case No. L K 99 507
                                      )
HOLLIE J. DAY,                        )
                                      )
                    Defendant.        )

JAN 3 1 2002
FILED

## RULE 215 ORDER

This cause coming to be heard on Defendant's Motion for a Rule 215 Examination of the Plaintiff, due notice having been given, and the Court being fully advised in the premises, IT IS HEREBY ORDERED:

1.     The Plaintiff shall be subject to only **one** Rule 215 exam to be performed by Dr. Avi J. Bernstein within ~~90~~ days of the entry of this order at a time agreeable to Plaintiff at Dr. Avi J. Bernstein's office at 1875 Dempster, Suite 425, Park Ridge, Illinois 60068.

2.     The Defendant shall compensate the Plaintiff within 15 days of the Rule 215 exam for any and all lost earnings, mileage at $.30 per mile, parking and gas as submitted by the Plaintiff within 5 days of the Rule 215 exam.

3.     That any and all costs of the Rule 215 exam by Dr. Avi J. Bernstein shall be paid by the Defendant and the Plaintiff will not be billed any costs and expenses.

4.     Dr. Avi J. Bernstein shall be informed of the contents of this order and provided a written copy of it 5 days in advance of the Rule 215 exam.

5.     The attorney for the Plaintiff and a court reporter may be present during the entire Rule 215 exam and shall not be prohibited from attending any portion of the exam. If the Defendant's attorney requests a copy of the transcript, he shall pay the court reporter the customary transcript fee.

6.     The Plaintiff shall be permitted to video tape the exam. at IT's expense for videographer

7.     That no invasive test or other medical procedure that involves risk to the Plaintiff be conducted. This includes but is not limited to blood tests, CAT scan, MRI, thermogram, x-rays, or EMG. Issue of MRI or x-rays is reserved, Defendant to provide notice to IT's attorney if ~~requested~~ either procedure is requested

8.     No patient questionnaire or other forms shall be completed by the Plaintiff. by Dr Bernstein not true to be given at least 5 days in advance of exam

1

9. That the exam be solely a physical exam and that all medical history be provided to the Rule 215 examiner ~~in written form~~.

10. No questions regarding the manner of the collision, other than the force of impact, shall be asked of the Plaintiff.

11. At no time shall this Rule 215 exam be referred to as an "independent" or "impartial" or "court-ordered" exam, nor shall the Rule 215 examiner be call the "court's" doctor.

12. That the Defendant stipulates that Dr. Avi J. Bernstein is the agent of the Defendant and may be presented as an adverse witness by the Plaintiff if the Defendant does not call him as a witness at trial. *This issue or ruling reserved*

13. That the Defendant stipulates that if the Defendant does not call Dr. Avi J. Bernstein as a witness at trial, the Plaintiff shall be entitled to have former I.P.I Jury Instruction 5.01 given to the jury at trial. *Ruling reserved on No. 13*

14. That the Defendant fully comply with the provisions and requirements of Illinois Supreme Court Rule 215(c).

15. The written Rule 215 report by Dr. Avi J. Bernstein shall set forth all of his findings, results of all tests, his diagnosis and bases thereof, and all of his conclusions and opinions and bases therof. Any additional or supplemental findings, diagnoses, conclusions and opinions and bases thereof shall be made in writing and labeled as supplemental and provided to the Plaintiff's attorneys within 10 days of being formulated and shall comply with any and all of the disclosure deadlines as ordered by the Court.

16. The Defendant shall provide to the Plaintiff's attorneys 10 days in advance of Dr. Avi J. Bernstein's deposition copies of all of the materials, medical records, x-rays or other diagnostic tests, studies and films relied on, reviewed, or used by the Rule 215 examiner, all of the Rule 215 examiner's charges related to this case, the income tax returns of the Rule 215 examiner from the last three years, and all of the correspondence between the Rule 215 examiner and the Defendant's attorney or anyone else in regards to the Rule 215 examiner's involvement in this case. *Issue + ruling on income tax return is reserved*

*Case to be continued to april 11, 10 Am 2002 Rm 310 for Status/CMC*

Date ___Jan 31, 2002___    Enter: ___Gene Wottoln___

(Judge)

RECEIPT ACKNOWLEDGED: _____

2

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J YOUNG*
SHARON M PEARL
KEN SODA (1997-2006)
MARK A PHEANIS
TODD B TARTER
DANIEL J CROWE
ROBERT J METTS
JAMES A SANTUCCI
ROBERT H JESS
JOSEPH R VALLORT
P CHAUNCEY CASSIDY
THEODORE C HADLEY
DAVID W ROSEMEYER
STEVEN B NOVY*
STEVEN M CANTY

KENNETH J GARVEY  Of Counsel

*Also admitted in Wisconsin
†Also admitted in Alaska
‡Also admitted in Indiana
§Also admitted in California

2000 SOUTH BATAVIA AVENUE
SECOND FLOOR
GENEVA, IL 60134

TELEPHONE (630) 262-4000
FACSIMILE (630) 262-1144
www.cypylaw.com

**CHICAGO**
150 S Wacker Drive, Suite 2400, Chicago, IL 60606
Telephone (312) 460-8000 Facsimile (312) 460-8299

**JOLIET**
54 N. Ottawa Street, Suite 540, Joliet, IL 60432
Telephone (815) 726-5262 Facsimile (815) 726-5562

**WAUKEGAN**
325 Washington Street, Suite 200, Waukegan, IL 60085
Telephone (847) 625-8200 Facsimile (847) 625-8262

LAURA M MAUL
JOSEPH W SHISTALAR
GARRY B ZAK
JAMES V CUSTODIO
PAUL E KRALOVEC
MAKEDONKA BALOSKIE
JEFFREY S GREENHAUM
REBECCA A BOZO
KAREN A HAARSGAARD
RONALD W PAYNE
SHAWN M BELL
KIMBERLY A EMERSON
EDWIN J OLSON
MICHAEL W BLAKE
COURTNEY D CARTER
MARY I PURCELL
JOHN K HOLONA
MICHAEL F BURNS
JORDAN D MAIYAS
MICHAEL J VALENTINE JR
JASON ORLEANS
PAUL K BRADY
MARK P DOYLE

Writer's Direct Line: (630) 262-3912
E-mail: bporter@cypylaw.com

August 16, 2007

Via Facsimile to: (630) 801-9833
Edward R. Peterka
Amoni Law Offices, P.C.
One North Constitution Drive
Aurora, IL 60506

COPY

RE:     **Jagdish D. Muzumdar v. Progressive Insurance Company**
        D/Loss:      3/26/04
        Our File:    261.07008

Dear Mr. Peterka:

Please be advised that we have re-scheduled petitioner for an examination with:

|           |                                              |
|-----------|----------------------------------------------|
| Doctor:   | Dr. Dr. J. S. Player                         |
| Address:  | 503 South Fourth Street, Aurora, IL  60505-4715 |
| Phone:    | (630) 897-0002                               |

The examination is scheduled for:

|       |                                          |
|-------|------------------------------------------|
| Date: | August 29, 2007                          |
| Time: | 10:30 am, please arrive at 10:15 am      |

Please make sure the petitioner attends this examination.

Thank you for your cooperation.

Very truly yours,

Bill Porter

ky

PLAINTIFF'S
EXHIBIT
11

# Magnani & Buck Ltd.

Attorneys at Law
Chicago Bar Association Building
321 South Plymouth Court
Suite 1700
Chicago, Illinois 60604
law@magnanibuck.com

Thomas L. Buck
Ximen J. Januszyk
Peter J. Magnani
Elizabeth M. Neidig
Jennifer K. Rawe
Katherine E. Sprowls

Telephone (312) 294-4800
Facsimile  (312) 294-4815

September 26, 2007

Mr. Jonathan Carbury
1814 S. Grandstand Place
Elgin, IL 60123

Mr. William Porter
Chilton, Yambert Porter & Young
2000 S. Batavia Avenue
Second Floor
Geneva, IL 60134

Mr. Edward Peterka
Amoni Law Offices
One North Constitution Drive
Aurora, IL 60506

Robert Speers
Speers Reuland & Cibulskis, P.C.
54 W. Downers Place
Aurora, IL 60506

          Re:  Muzumdar v. Progressive
               Underinsured Motorist Arbitration Claim
               Our File No.:  2277.4

Gentlemen:

This letter will serve to confirm that the arbitration for
the above-captioned matter has been rescheduled to December
7, 2007 at 10:00 a.m. at arbitrator Speers' office.



PLAINTIFF'S
EXHIBIT
12

RECEIVED SEP 2 6 2007

Very truly yours,

Magnani & Buck Ltd.

By:    Ximen J. Januszyk

ttm

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J. CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J. YOUNG*
SHARON M. PEART
KEN SOLDAT (1957-2006)
MARK A. PHEANIS
TODD B. TARTER
DANIEL T. CROWE
ROBERT J. METTS
JAMES A. SANTUCCI
ROBERT B. HESS
JOSEPH R. VALLORT†
P. CHAUNCEY CASSIDY
THEODORE C. HADLEY
DAVID W. ROSEMEYER
STEVEN B. NOVY*
STEVEN M. CANTY

KENNETH T. GARVEY  *Of Counsel*

*Also admitted in Wisconsin
†Also admitted in Alaska
‡Also admitted in Indiana
◊Also admitted in California

2000 SOUTH BATAVIA AVENUE
SECOND FLOOR
GENEVA, ILLINOIS 60134

TELEPHONE (630) 262-4000
FACSIMILE (630) 262-1144
www.cypylaw.com

**CHICAGO**
150 S. Wacker Drive, Suite 2400, Chicago, IL 60606
Telephone: (312) 460-8000  Facsimile: (312) 460-8299

**JOLIET**
54 N. Ottawa Street, Suite 540, Joliet, IL 60432
Telephone: (815) 726-5262  Facsimile: (815) 726-5562

**WAUKEGAN**
325 Washington Street, Suite 200, Waukegan, IL 60085
Telephone: (847) 625-8200 Facsimile: (847) 625-8262

LAURA M. MAUL
JOSEPH W. SUBSTALAE
GARRY B. ZAK
JAMES V. CUSTODIO
PAUL E. KRALOVEC
MAKEDONKA BALOSKI‡
JEFFREY S. GREENBAUM
REBECCA A. FOZO
RONALD W. PAYNE
SHAWN M. BELL
KIMBERLY A. EMERSON
EDWIN J. OLSON
MICHAEL W. BLAKE
COURTNEY D. CARTER
MARY T. PURCELL
JOHN K. HOLIONA
MICHAEL F. BURNS
JORDAN D. MATYAS
JASON ORLEANS
PAUL E. BRADY
MARK P. DOYLE◊
REAGAN F. GOINS
DANA T. BRISBON
BRADLEY L. BREJCHA

November 12, 2007

Writer's Direct Line: (630) 262-3912
E-mail: bporter@cypylaw.com

Edward R. Peterka
Amoni Law Offices, P.C.
One North Constitution Drive
Aurora, IL 60506

RE:  **Jagdish D. Muzumdar v. Progressive Insurance Company**
D/Loss:     3/26/04
Our File:    261.07008

Dear Mr. Peterka:

I have had discussions with the representatives of Progressive.

My recommendation to my client would be to set an appointment for your client to be examined and evaluated by the physician I initially recommended to them, Dr. Mather. There will be no agreement on this side for a videotape or stenographer to be present. There is no basis in the Illinois Supreme Court Rules or Illinois Civil Practice Act mandating that I agree to this. Consequently, In light of the difficulty in getting this task done in respect to moving forward with your client's claim, I would ask that your client agree to these conditions.

I have recommended that my client agree and ask Dr. Mather to also agree that the Plaintiff may exercise his right under the Civil Practice Act to allow one person to attend the exam. That person will not be a stenographer or videographer. That one person can be chosen pursuant only to the rule.



PLAINTIFF'S
EXHIBIT
13

RECEIVED NOV 1 4 2007

Edward R. Peterka
Amoni Law Offices, P.C.
November 12, 2007
Page 2


Please let me know what your client's response is.  If you wish to discuss it further, feel free to call me.

Yours very truly,

Bill Porter
BP:ps

cc:     Leslie Mako, Progressive Insurance Company

# Amoni Law
## Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER

JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506          *Also Licensed in Missouri & California

November 29, 2007

Via U.S. mail and facsimile

Bill Porter
Chilton Yambert Porter & Young
2000 S. Batavia Ave., Second Floor
Geneva, IL 60134
Telephone:    (630) 262-4000
Facsimile:    (630) 262-1144

RE:    Muzumdar v. Progressive
       Underinsured Motorist Arbitration Claim

Dear Mr. Porter,

Since we last talked before Thanksgiving, I still have not heard from you concerning the available dates for Dr. Mather's IME of Dr. Muzumdar despite your promise to have your assistant provide the dates and contact Ed or me immediately. As I told you, we have scheduled Dr. Dhiman and Dr. Mikolajczak to appear in person at the arbitration and we are paying their professional fees for their time and travel. Accordingly, we are going to mail out our arbitration packet and proceed with the December 7, 2007 arbitration as scheduled.

Also, I have enclosed a copy of Dr. Dhiman's August 21, 2007 note which we recently received.

If you have any questions, please feel free to call me.

Sincerely yours,

AMONI LAW OFFICES, P.C.,

Larry M. Amoni

Enclosures

PLAINTIFF'S
EXHIBIT
14

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J. CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J. YOUNG*
SHARON M. PEART
KEN SOLDAT (1957-2006)
MARK A. PHEANIS
TODD B. TARTER
DANIEL T. CROWE
ROBERT J. METTS
JAMES A. SANTUCCI
ROBERT B. HESS
JOSEPH R. VALLORT†
P. CHAUNCEY CASSIDY
THEODORE C. HADLEY
DAVID W. ROSEMEYER
STEVEN B. NOVY*
STEVEN M. CANTY

KENNETH T. GARVEY   *Of Counsel*

*Also admitted in Wisconsin
†Also admitted in Alaska
‡Also admitted in Indiana
◊Also admitted in California

2000 SOUTH BATAVIA AVENUE
SECOND FLOOR
GENEVA, ILLINOIS 60134

TELEPHONE (630) 262-4000
FACSIMILE (630) 262-1144
www.cypylaw.com

**CHICAGO**
150 S. Wacker Drive, Suite 2400, Chicago, IL 60606
Telephone: (312) 460-8000  Facsimile: (312) 460-8299

**JOLIET**
54 N. Ottawa Street, Suite 540, Joliet, IL 60432
Telephone: (815) 726-5262  Facsimile: (815) 726-5562

**WAUKEGAN**
325 Washington Street, Suite 200, Waukegan, IL 60085
Telephone: (847) 625-8200  Facsimile: (847) 625-8262

LAURA M. MAUL
JOSEPH W. SUBSTALAE
GARRY B. ZAK
JAMES V. CUSTODIO
PAUL E. KRALOVEC
MAKEDONKA BALOSKI‡
JEFFREY S. GREENBAUM
REBECCA A. FOZO
RONALD W. PAYNE
SHAWN M. BELL
KIMBERLY A. EMERSON
EDWIN J. OLSON
MICHAEL W. BLAKE
COURTNEY D. CARTER
MARY T. PURCELL
JOHN K. HOLIONA
MICHAEL F. BURNS
JORDAN D. MATYAS
JASON ORLEANS
PAUL E. BRADY
MARK P. DOYLE◊
REAGAN F. GOINS
DANA T. BRISBON
BRADLEY L. BREJCHA

November 29, 2007

Writer's Direct Line: (630) 262-3912
E-mail: bporter@cypylaw.com

## VIA FACSIMILE & REGULAR MAIL
Mr. Larry M. Amoni
Amoni Law Offices, P.C.
One North Constitution Drive
Aurora, IL 60506

RE:  **Jagdish D. Muzumdar v. Progressive Insurance Company**
     D/Loss:    3/26/04
     Our File:   261.07008

Dear Mr. Amoni:

I have yours of November 29, 2007.

First, my staff is still trying to find a doctor who is willing to do an exam with another individual present. Dr. Mather and several others have been ruled out.

I have a phone call in to the staff of yet another doctor to see if this can be done.

Further, the delay in this matter has not been my fault. Accordingly, I am going to ask, by copy of this letter, to put the arbitration over for a period of time to allow me to get an examination of your client accomplished and then we can move forward.

If the delay was solely the result of something I have done, I might have empathy for your position. However, this delay has not been the result of any doing on my part.



RECEIVED DEC - 3 2007

Mr. Larry M. Amoni
Amoni Law Offices, P.C.
November 29, 2007
Page 2


Accordingly, as far as I am concerned, there will not be an arbitration on December 7, 2007. Even if I had an agreement from Dr. Mather, as suggested in the past, to do this exam, there would be virtually no chance of having a report in hand before the hearing date. Therefore, your insistence on proceeding does not make sense from my vantage point.

Yours very truly,

Bill Porter
BP:ps

cc:    Ximen Januszyk, Magnani & Buck
       Jonathan L. Carbary, Jonathan L. Carbary, Ltd.
       Robert Speers, Speers, Reuland & Cibulskis P.C.

# CHILTON YAMBERT PORTER & YOUNG LLP
## ATTORNEYS AT LAW

LARRY J CHILTON
JON YAMBERT
BILL PORTER
TIMOTHY J. YOUNG*
SHARON M PEART
KEN SOLDAT (1957-2006)
MARK A PHEANIS
TODD D TARTER
DANIEL F CROWE
ROBERT J METTS
JAMES A SANTUCCI
ROBERT G HESS
JOSEPH R VALLORT†
P CHAUNCEY CASSIDY
THEODORE C HADLEY
DAVID W ROSEMEYER
STEVEN B NOVY*
STEVEN M CANLY

KENNETH T. GARVEY  Of Counsel

*Also admitted in Wisconsin
†Also admitted in Alaska
‡Also admitted in Indiana
◊Also admitted in California

2000 SOUTH BATAVIA AVENUE
SECOND FLOOR
GENEVA, ILLINOIS 60134

TELEPHONE (630) 262-4000
FACSIMILE (630) 262-1144
www.cypylaw.com

### CHICAGO
150 S. Wacker Drive, Suite 2400, Chicago, IL 60606
Telephone: (312) 460-8000  Facsimile  (312) 460-8200

### JOLIET
54 N. Ottawa Street, Suite 540, Joliet, IL 60432
Telephone: (815) 726-5262  Facsimile: (815) 726-5562

### WAUKEGAN
325 Washington Street, Suite 200, Waukegan, IL 60085
Telephone: (847) 625-8200 Facsimile: (847) 625-8262

LAURA M MATH
JOSEPH W SUBSTALAE
GARRY B ZAK
JAMES V CUSTODIO
PAUL E KRALOVEC
MAKEDONKA BALOSKI‡
JEFFREY S GREENBAUM
REBECCA A POZO
RONALD W PAYNE
SHAWN M BELL
KIMBERLY A EMERSON
EDWIN J OLSON
MICHAEL W BLAKE
COURTNEY D CARTER
MARY T PURCELL
JOHN K HOLUNA
MICHAEL P BURNS
JORDAN D MATYAS
JASON ORLEANS
PAUL E BRADY
MARK P DOYLE◊
BRADLEY C VAND
DANA F BRISHON
BRADLEY L BRECHA
WILLIAM J NOBLE, III

Writer's Direct Line: 630-262-4912
E-mail: bporter@cypylaw.com

December 10, 2007

Arbitrator Robert L. Speers
(Via Fax to: 630-264-2727)

Arbitrator Jonathan L. Carbary
(Via Fax to:  847-888-0929)

Arbitrator Ximen Januszyk
(Via Fax to: 312-294-4815)

Attorney Edward R. Peterka
(Via Fax to: 630-801-9833)

RE:   **Jagdish D. Muzumdar v. Progressive Insurance Company**
   D/Loss:  3/26/04
   Our File:  261.07008

Dear Counselors:

Please allow this to confirm that the arbitration of this matter has been re-scheduled to February 26, 2008 at 1:00 p.m. at my office located at 2000 South Batavia Avenue, Second Floor, Geneva, Illinois.

Thank you for your assistance in scheduling this matter.

Yours very truly,

*Bill Porter*
Bill Porter

cc:  Leslie Mako,
  Progressive Insurance Company

PLAINTIFF'S
EXHIBIT
16

RECEIVED DEC 1 0 2007

# $\mathcal{A}$moni Law
## Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER
JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506    *Also Licensed in Missouri & California

January 21, 2008

Via facsimile and U.S. mail

William Porter
Chilton Yambert Porter & Young
2000 S. Batavia Ave., Second Floor
Geneva, IL 60134
Telephone:      (630) 262-4000
Facsimile:      (630) 262-1144

RE:    Muzumdar v. Progressive
       Underinsured Motorist Arbitration Claim

Dear Mr. Porter,

In follow-up to our telephone conversation two weeks ago and in response to your request for an IME physician who would examine Dr. Muzumdar in the presence of an attorney, court reporter and/or videographer, I offered the name of Dr. Bruce Montella. You told me you needed to check with the Progressive adjuster to see if Dr. Montella was sufficient. I have not heard from you since our last phone call. As soon as possible, please let me or Larry know what your decision is concerning Dr. Montella and the IME of Dr. Muzumdar.

Both Larry and I have made arrangements with the witnesses to appear at the February 26, 2008 arbitration and we would like to get this claim heard and completed. I look forward to your anticipated cooperation and response.

Sincerely yours,

AMONI LAW OFFICES, P.C.,

Edward R. Peterka

PLAINTIFF'S
EXHIBIT
17
tabbies

Telephone: (630) 264.2020    Facsimile: (630) 801.9833    E-Mail: info@amonilaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAGDISH D. MUZUMDAR, | ) | |
| | ) | `08CV1672 RCC` |
| Plaintiff, | ) | `JUDGE GOTTSCHALL` |
| | ) | `MAGISTRATE JUDGE BROWN` |
| VS. | ) | |
| | ) | |
| THE PROGRESSIVE CORPORATION, | ) | |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY and PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2008, that I have mailed by United States Postal Service the **ATTORNEY APPEARANCE FORM and NOTICE OF REMOVAL** to the following non CM/ECF participants:

Edward R. Peterka
Amoni Law Offices, P.C.
One North Constitution Drive
Aurora, IL 60506

**s/Bill Porter**
Attorney Bar No. 6183435
Chilton Yambert & Porter LLP
2000 South Batavia Avenue, 2nd Floor
Geneva, IL   60134
Telephone: (630) 262-4000
Facsimile: (630) 262-1144
Email: bporter@cyp-law.com