**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

JAGDISH D. MUZUMDAR,                           )
                                               )
                    Plaintiff,                 )        No. 08 C 1672
                                               )        Honorable Joan Gottschall
          v.                                   )        Honorable Brown
                                               )
THE PROGRESSIVE CORPORATION,                   )
PROGRESSIVE CASUALTY INSURANCE                 )
COMPANY and PROGRESSIVE SPECIALTY              )
INSURANCE COMPANY,                             )        Matter removed from the Illinois
                                               )        16th Judicial Circuit, Kane County
                    Defendants.                )        08 MR K 145

# Document 18
# Redacted Exhibit A

# Proposed Amended Notice of Removal

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAGDISH D. MUZUMDAR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 1672 |
| | ) | Honorable Joan Gottschall |
| v. | ) | Honorable Soat Brown |
| | ) | |
| THE PROGRESSIVE CORPORATION, | ) | |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY and PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | Matter removed from the Illinois |
| | ) | 16th Judicial Circuit, Kane County |
| Defendants. | ) | 08 MR K 145 |

## AMENDED NOTICE OF REMOVAL

To the Honorable Judges of the United States District Court for the Northern District:

REMOVING PARTY, PROGRESSIVE SPECIALTY INSURANCE COMPANY (hereinafter referred to as "PROGRESSIVE SPECIALTY"), by its attorneys, CHILTON YAMBERT & PORTER LLP, respectfully informs this Court as follows:

1.    The removing party is a Defendant in the above-captioned cause of action.

2.    On February 15, 2008, the above-captioned cause of action, a Declaratory Judgment Action, was commenced in the Illinois Sixteenth Judicial Circuit, Kane County, and is pending in that court.

3.    On February 21, 2008, PROGRESSIVE SPECIALTY received service of the Declaratory Judgment Action by mail directed to its attorney, Bill Porter of CHILTON YAMBERT & PORTER LLP in Geneva, Illinois. (A copy of the correspondence tendering the Declaratory Judgment Complaint is attached hereto as Exhibit 1).

4.    The Notice of Removal was filed with this Court on March 21, 2008, within thirty (30) days after service.

5.    This cause of action involves citizens of different states, the amount in controversy, exclusive of interest and costs, exceeds $75,000, and thus this Court has original jurisdiction of this matter pursuant to 28 U.S.C. §1332.

6.    The dispute between the parties involves Underinsured Motorist Coverage provided to the Plaintiff and a disagreement concerning the amount of compensation the Plaintiff should receive from his Underinsured Motorist Coverage carrier.

7.    At the time of commencement of this action in the Sixteenth Judicial Circuit, Kane County, and since that time, Plaintiff was and is a citizen and resident of the State of Illinois.

8.    The removing party, PROGRESSIVE SPECIALTY, was at the time of filing and is currently incorporated in the State of Ohio and its principal place of business is located in the State of Ohio. (*See* Affidavit of Michael R. Uth attached hereto as Exhibit 2.)

9.    The other two (2) Defendants, The Progressive Corporation and Progressive Casualty Insurance Company, were improperly added to this cause of action. PROGRESSIVE SPECIALTY issued the policy of insurance in issue in this cause of action. (*See* Plaintiff's attachment #1 to the Declaratory Judgment Complaint. Plaintiff's Declaratory Judgment Complaint was attached as Exhibit "C" to the original Notice of Removal.) The Progressive Corporation and Progressive Casualty Insurance Company anticipate a prompt dismissal from the cause of action, because they did not provide Underinsured Motorist Coverage to the Plaintiff.

10.    Addition of the other two (2) Defendants, The Progressive Corporation and Progressive Casualty Insurance Company, does *not* impact this Court's diversity jurisdiction. Both The Progressive Corporation and Progressive Casualty Insurance Company were at the

time of filing and are currently incorporated in the State of Ohio and their principal places of business are located in the State of Ohio. (*See* Affidavit of Michael R. Uth attached hereto as Exhibit 2.)

11.     The amount in controversy between the parties is in excess of $75,000.  Plaintiff has demanded the $500,000 policy limit to resolve the Underinsured Motorist Coverage claim. (*See* second page of the demand letter from Plaintiff's attorney, dated January 22, 2007, attached hereto as Exhibit 3.)  Due to set-offs, the entire $500,000 Underinsured Motorist Coverage policy limit is not available, but as later acknowledged in the demand letter, $420,000 is in dispute between the parties.

12.     In this matter, Plaintiff claims wage loss alone in excess of $200,000.  (*See* Answer No. 8 in Petitioner's Answers to Interrogatories, attached hereto as Exhibit 4.)

13.     Removal of this action from the Sixteenth Judicial Circuit, Kane County, Illinois, to this Court is proper pursuant to 28 U.S.C. §1441(a).

14.     Copies of all process documents and pleadings served on the removing party were attached to the original Notice of Removal, and are therefore filed with this Court.

15.     Written notice of the filing of the original Notice of Removal was given to Plaintiff's attorney; and notice of the filing of this Amended Notice of Removal will be provided to Plaintiff's attorney promptly required by 28 U.S.C. §1446(d).  Plaintiff's attorney was also informed orally of the removing party's intent to file this Amended Notice of Removal.

16.     By filing this Amended Notice of Removal, PROGRESSIVE SPECIALTY does not waive any jurisdictional objection or any other defenses that are or may be available.

WHEREFORE, the removing party, PROGRESSIVE SPECIALTY INSURANCE COMPANY prays that this Honorable Court accept the removal of this cause of action from the Sixteenth Judicial Circuit, Kane County, Illinois.

PROGRESSIVE SPECIALTY INSURANCE
COMPANY, Defendant,


By:___s/ Theodore C. Hadley_____
          Attorney for Defendants


CHILTON YAMBERT & PORTER LLP
150 South Wacker, Suite 2400
Chicago, Illinois 60606
Phone: (312) 460-8000
Facsimile: (312) 460-8299
Attorney No: 6188423



LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER

JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506          *Also Licensed in Missouri & California

February 21, 2008

William Porter
Chilton Yambert Porter & Young
2000 S. Batavia Ave., Second Floor
Geneva, IL 60134

RE:   *Muzumdar v. Progressive*
      Underinsured Motorist Arbitration Claim

Dear Mr. Porter,

Enclosed please find a copy of the Declaratory Judgment Complaint filed in this matter.

Sincerely yours,

AMONI LAW OFFICES, P.C.

Corkey Schwartz
Assistant

Encl.

cc:   Jagdish Muzumdar

EXHIBIT
1

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

| | | |
|---|---|---|
| JAGDISH D. MUZUMDAR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 08 MR K 145 |
| | ) | |
| VS. | ) | |
| | ) | |
| THE PROGRESSIVE CORPORATION, | ) | AFFIDAVIT OF MICHAEL R. UTH |
| PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY and PROGRESSIVE SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT

I, Michael R. Uth, being first duly sworn, deposes and says:

1. I am an Associate General Counsel for companies within the Progressive Group of Insurance Companies ("Progressive") and, in that capacity, I am familiar with the corporate structure and organization of Progressive.

2. Progressive Speciality Insurance Company is an Ohio Domiciled corporation with its principle place of business in Mayfield Village, Ohio.

3. Progressive Casualty Insurance Company is an Ohio Domiciled corporation with its principle place of business in Mayfield Village, Ohio.

4. The Progressive Corporation is an Ohio Domiciled corporation with its principle place of business in Mayfield Village, Ohio.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Michael R. Uth

SUBSCRIBED and SWORN to before me this _18th_ day of _April_, 2008.

_____
NOTARY PUBLIC

TRICIA A. BRUNTON
NOTARY PUBLIC
STATE OF OHIO
My Comm. Expires
January 31, 2010

**EXHIBIT**
**2**



**Amoni Law**
Offices, P.C.

LARRY M. AMONI
EDWARD R. PETERKA*
MOLLY J. MILLER
JOHN J. CASTANEDA
OF COUNSEL

ONE NORTH CONSTITUTION DRIVE · AURORA, ILLINOIS 60506          *Also Licensed in Missouri & California

January 22, 2007

Via U.S. mail

Tammy Bitzer
Sr. Claims Specialist
Progressive Specialty Insurance Company
2056 Westings Avenue, Suite 350
Naperville, IL 60563
Telephone:     (630) 637-2333
               (630) 637-8022 (direct line)
Facsimile:     (630) 637-2996

RE:     Claim No.           042626561
        Policy No.:         50014863-4
        Insured:            Jagdish D. Muzumdar
        Date of Loss:       03/26/04

Dear Ms. Bitzer,

In follow-up to your December 12, 2006, I have enclosed the Affidavit of Uninsured/Underinsured Motorist Bodily Injury Insurance signed by Jagdish Muzumdar, and Answers to Interrogatories and insurance declaration sheets for Mr. Gliva and Mr. Gahr, and copies of the following documents:

1.     Medical records of Community Orthopedics
2.     Medical records and bills of Frances Agnogli
3.     Medical records and bills of Silver Cross Hospital
4.     Silver Cross Emergency Room Patient Volume Statistics
5.     Dr. Muzumdar's income tax returns from 1999-2005
6.     Dr. Muzumdar's wage and patient statements from 1998-2006 from Team Health

Also, the following deposition transcripts may be ordered from the following court reporters:

Dr. Jagdish Muzumdar (12/19/05)(Sharon Kendall, Hartnett & Catellani, Legalink (312) 263-3524)
Amey Muzumdar (12/19/05)(Sharon Kendall, Hartnett & Catellani, Legalink (312) 263-3524)
Dr. George Verghese (5/4/06)(Brenda Partridge, Legalink (312) 263-3524)
Dr. Surender Dhiman (6/8/06)(Ryan M. DeClerck, Jensen Reporting (312) 236-6936)
Dr. David Mikolajczak (9/8/06)(Ryan M. DeClerck, Jensen Reporting (312) 236-6936)
Karen Boyes, Accountant (9/12/06)(Michelle Amelio, Jensen Reporting (312) 236-6936)
Pat Gholson, Team Health (9/18/06)(Michelle Amelio, Jensen Reporting (312) 236-6936)

**EXHIBIT**

**3**

In light of Mr. Balgord's January 11, 2007 letter and the Selection Form of $40,000 UIM limits for Continental which he enclosed, the UIM policy of Progressive is now the primary insurance policy since American Hardware's UIM policy does not obtain.

Accordingly, pursuant to the Arbitration section of Part III - Uninsured/Underinsured Motorist Coverage of Dr. Muzumdar's Progressive automobile insurance policy and on behalf of Dr. Muzumdar, I reiterate my prior demand of arbitration of Dr. Muzumdar's UIM claim. I name Jonathan L. Carbary, Esq., 1814 Grandstand Place, Elgin, IL 60123 (847) 888-0919 as the arbitrator on our behalf. Please inform me of the name and address of your arbitrator so the selected arbitrators can then select a third arbitrator within 45 days pursuant to the policy terms.

Dr. Muzumdar's settlement demand for his UIM claim is the $500,000 policy limit of his coverage. Dr. Muzumdar's orthopedic surgeons, Dr. Dhiman and Dr. Verghese, both testified that the March 26, 2004 crash caused Dr. Muzumdar to experience disk herniations at L4-L5 and L5-S1 with associated radiculopathy and a left knee injury with a possible medial meniscal tear. These physicians testified that these conditions will progress and worsen and will require Dr. Muzumdar to undergo back surgery and knee arthroscopy in the future. Accordingly, his future medical expenses will be in excess of $75,000. In addition, these injuries have diminished Dr. Muzumdar's ability so that he cannot see as many patients as he could before the crash. The less patients he sees, the less income he generates. Dr. Muzumdar's diminution in his earning capacity is presently in excess of $222,000. I have enclosed a summary of the Dr. Muzumdar's gross yearly earnings and patient totals from 1998 to 9/14/06. These figures clearly indicate that since the 3/26/04 crash Dr. Muzumdar is seeing a fewer number of patients at Silver Cross even though the number of patients coming into the Silver Cross emergency room is increasing. This wage loss will certainly continue as long as Dr. Muzumdar's low back pain and knee pain continue to impair his ability to see patients. Dr. Dhiman and Dr. Verghese testified that more likely than not Dr. Muzumdar's crash injuries are permanent and continuing injuries and impairments. Hence, this demand is patently reasonable in light of Dr. Muzumdar's continuing injuries and damages.

Also, in review of your December 12, 2006 and the Limits of Liability section of Part III - Uninsured/Underinsured Motorist Coverage of Dr. Muzumdar's Progressive automobile insurance policy, specifically page 23 of the policy (a copy is enclosed), the Limits of Liability section of the policy specifically states that Dr. Muzumdar's bodily injuries and damages under Part III shall be reduced by all sums **paid** because of bodily injury by or on behalf of any persons or organizations that may be legally responsible. Based on this unambiguous language, Dr. Muzumdar's UIM limits of $500,000 would be reduced by only $80,000, the amount paid, and not the $120,000 representing the combined policy limits of Mr. Gahr and Mr. Gliva.

I look forward to the prompt arbitration or resolution of this claim. If you require any additional information or if you have any questions, please contact my office.

Sincerely yours,

AMONI LAW OFFICES, P.C.,

Edward R. Peterka

Enclosures

# IN RE THE ARBITRATION OF

JAGDISH D. MUZUMDAR and ⟩
                   ⟩
       Petitioner,     ⟩
                   ⟩
vs.                   ⟩
                   ⟩
PROGRESSIVE INSURANCE,  ⟩
                   ⟩
       Respondent.    ⟩

## PETITIONER'S ANSWERS TO RESPONDENT'S INTERROGATORIES

NOW COMES the Petitioner, JAGDISH MUZUMDAR, by and through his attorneys, Amoni Law Offices, P.C., and for his Answers to the Interrogatories propounded by the Respondent, PROGRESSIVE INSURANCE, he states as follows:

1.    State your full name, as well as your current residence address, date of birth, marital status, driver's license number and issuing state and social security number.

**ANSWER:**
Name:             Jagdish D. Muzumdar
Address:         1303 Midwest Club Parkway, Oak Brook, IL 60523
DOB:             ██45
Marital Status:    Married
IL Driver's License No.:   ████5058
Social Security No.:    ████5977

2.    State the full name and current residence address of each person who witnessed or claims to have witnessed the occurrence that is the subject of this suit (hereinafter referred to simply as the occurrence).

**ANSWER:**
Jagdish D. Muzumdar, 1303 Midwest Club Parkway, Oak Brook, IL 60523
Amey Muzumdar, 1303 Midwest Club Parkway, Oak Brook, IL 60523
Jerome Gliva, 12523 71st Court, Palos Height, IL 60463
Timothy Gahr, 4120 Park Ave., Brookfield, IL 60513
Investigation continues.

3.    State the full name and current residence address of each person not named in interrogatory No. 2 above, who was present and/or claims to have been present at the scene immediately before, at the time of, and/or immediately after the occurrence

**ANSWER:**
Countryside Police Officer Shawn Sloan, Countryside Police Department, 5550 East Ave., Countryside, IL 60525
Countryside Police Officer Timothy Wherry, Countryside Police Department, 5550 East Ave., Countryside, IL 60525
Investigation continues.

1

EXHIBIT
4

4.    As a result of the occurrence, were you made a Respondent in any criminal or traffic case? If so, state the court, the caption, the case number, the charge or charges filed against you, whether you pleaded guilty thereto and the final disposition.

ANSWER:
No.

5.    Describe the personal injuries sustained by you as a result of the occurrence.

ANSWER:
As a result of the crash at issue, the Petitioner experienced injuries to his left knee and spine, including but not limited to disk protrusion at L4-L5 and L5-S1 with radicular pain. See the Petitioner's medical records. Investigation continues.

6.    With regard to your injuries, state:

a.    The name and address of each attending physician and/or health care professional;

b.    The name and address or each consulting physician and/or health care professional;

c.    The name and address or each person and/or laboratory taking any x-ray, MRI and/or other radiological tests of you;

d.    The date or inclusive dates on which each of them rendered you service;

e.    The amounts to date of their respective bills for service; and,

f.    From whom of them you have written reports?

ANSWER:
The Petitioner received medical care and treatment for his complaints, injuries and conditions of ill-being related to the crash at issue from the following health care providers:

Surender Dhiman, M.D., George Verghese, M.D., Community Orthopedics, 1240 Essington Road, Suite 200, Joliet IL 60435
Date(s) of service:      03/30/04
                         04/06/04
                         05/13/04
                         06/16/04
                         07/13/05
                         05/25/06

Date(s) of service:      Silver Cross Hospital, 1200 Maple Road, Joliet IL 605432
Date(s) of service:      05/05/04 (MRI)
                         06/17/04 (PT)
                         06/18/04 (PT)
                         06/24/04 (PT)
                         06/25/04 (PT)
                         06/30/04 (PT)

2

See the Petitioner's medical records and bills produced in his Responses to the Respondent's Rule 214 Request for Production. Investigation continues.

7.   As the result of your personal injuries, were you a patient or outpatient in any hospital and/or clinic? If so, state the names and addresses of all hospitals and/or clinics, the amounts of their respective bills, and the date or inclusive dates of said services.

ANSWER:
See the Petitioner's Answer to Interrogatory No. 5. Investigation continues.

8.   As the result of your personal injuries, were you unable to work? If so, state

   a.   The name and address of your employer, if any, at the time of the occurrence, your wage and/or salary, and the name of your supervisor and/or foreperson;

   b.   The date or inclusive dates on which you were unable to work

   c.   The amount of wage and/or income loss claimed by you; and

   d.   The name and address of your present employer and your wage and/or salary.

ANSWER:
Yes. The Petitioner is self-employed and works as an emergency room physician at Silver Cross Hospital, 1200 Maple Road, Joliet IL 60432 and West Suburban Hospital, 3 Erie Court, Oak Park, IL 60302-2599. See the Petitioner's income tax returns and W-2s from 2002-2004 and the documents concerning his fees. Due to his injuries, the Petitioner could not and cannot see as many patients as he did before the crash and experienced and continues to experience a diminution and loss of his earning capacity. His wage loss and diminution and loss of his earning capacity are in excess of $200,000. The Petitioner is presently self-employed and works in the same capacity. Investigation continues.

9.   State any and all other expenses and/or losses you claim as a result of the occurrence. As to each expense and/or loss, state the date or dates it was incurred, the name of the person, firm and/or company to whom such amounts are owed, whether the expense and/or loss in question has been paid and, if so, by whom it was paid, and describe the reason and/or purpose for each expense and/or loss.

ANSWER:
The Petitioner claims any and all past and future expenses and losses that he is lawfully entitled, including, but not limited to, pain and suffering, disability/loss of a normal life, lost wages, diminution and loss of earning capacity, medical expenses, and risk of future injury and damages including pain and suffering, disability/loss of a normal life, lost wages, diminution and loss of earning capacity, medical expenses, and disfigurement. Investigation continues.

10.   Had you suffered any personal injury or prolonged, serious and/or chronic illness prior to the date of the occurrence? If so, state when and how you were injured and/or ill, where you were injured and/or ill, describe the injuries and/or illness suffered, and state the name and address of each physician, or other health care professional, hospital and/or clinic rendering you treatment for each injury and/or chronic illness.

ANSWER:
Objection, pursuant to Voykin v. DeBoer this interrogatory calls for irrelevant information and the interrogatory is without time limitation and is unduly burdensome to answer since

It is without a time limitation and it is vague and ambiguous as to "personal injury or prolonged serious and/or chronic illness" and may call for privileged information pursuant to the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1 et seq. Without waiving these objections, the Petitioner did not experience any serious injury or chronic condition or illness prior to the crash at issue. Investigation continues.

11.    Are you claiming any psychiatric, psychological and/or emotional injuries as a result of this occurrence? If so, state:

   a.    The name of any psychiatric, psychological and/or emotional injury claimed, and the name and address of each psychiatrist, physician, psychologist, therapist, or other health care professional rendering you treatment for each injury;

   b.    Whether you suffered any psychiatric, psychological and/or emotional injury prior to the date of the occurrence; and

   c.    If (b) is in the affirmative, please state when and the nature of any psychiatric, psychological and/or emotional injury, and the name and address of each psychiatrist, physician, psychologist, therapist or other health care professional rendering you treatment for each injury.

**ANSWER:**
No.

12.    Have you suffered any personal injury or prolonged, serious and/or chronic illness since the date of the occurrence? If so, state when you were injured and/or ill, where and how you were injured and/or ill, describe the injuries and/or the illness suffered, and state the name and address of each physician or other health care professional, hospital and/or clinic rendering you treatment for each injury and/or chronic illness.

**ANSWER:**
Objection, pursuant to <u>Voykin v. DeBoer</u> this interrogatory calls for irrelevant information and the interrogatory is without time limitation and is unduly burdensome to answer since it is without a time limitation and it is vague and ambiguous as to "personal injury or prolonged serious and/or chronic illness" and may call for privileged information pursuant to the Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1 et seq. Without waiving these objections, the Petitioner did not experience any serious injury or chronic condition or illness since the crash at issue other than those injuries and conditions caused or aggravated by the crash at issue. Investigation continues.

13.    Have you ever filed any other suits for your own personal injuries? If so, state the nature of the injuries claimed, the courts and the captions in which filed, the years filed, and the titles and docket numbers of the suits.

**ANSWER:**
None other than the underlying lawsuit concerning the instant car crash.

14.    Have you ever filed a claim for and/or received any workers' compensation benefits? If so, state the name and address of the employer against whom you filed for and/or received benefits, the date of the alleged accident or accidents, the description of the alleged accident or accidents, the nature of your injuries claimed and the name of the insurance company, if any, who paid such benefits.

**ANSWER:**

4

No.

15.   Were any photographs, movies and/or videotapes taken of the scene of the occurrence or of the persons and/or vehicles involved? If so, state the date or dates on which such photographs, movies and/or videotapes were taken, the subject thereof, who now has custody of them, and the name, address, occupation and employer of the person taking them.

ANSWER:
Upon information and belief, photographs of the vehicles were taken; however, no photographs are in the possession of the Petitioner or his attorneys.   Investigation continues.

16.   Have you (or has anyone acting on your behalf) had any conversations with any person at any time with regard to the manner in which the occurrence complained of occurred, or have you overheard any statements made by any person at any time with regard to the injuries complained of by Petitioner or to the manner in which the occurrence complained of occurred? If the answer to this interrogatory is in the affirmative, state the following:

   a.   The date or dates of such conversations and/or statements;

   b.   The place of such conversations and/or statements;

   c.   All persons present for the conversations and/or statements;

   d.   The matters and things stated by the person in the conversations and/or statements.

   e.   Whether the conversation was oral, written and/or recorded; and

   f.   Who has possession of the statement if written and/or record.

ANSWER:
Yes.   The Petitioner spoke with the investigating police officers, the other drivers, his family members, his friends and co-workers, and his health care providers concerning the circumstances of the crash and his injuries related to the crash.   See the statements contained in the Illinois Traffic Crash Report and the Petitioner's medical records.   The attorney-client privilege is claimed for the Petitioner's statements to and from his attorneys.   Investigation continues.

17.   Do you know of any statements made by any person relating to the occurrence?   If so, give the name and address of each such witness, the date of the statement, and state whether such statement was written and/or oral.

ANSWER:
Yes.   See the Petitioner's Answer to Interrogatory No. 16 and the documents produced by the Petitioner in his Response to the Respondent's Rule 214 Request for Production.   Also, the following people gave discovery depositions in the underlying lawsuit concerning this car crash:

1)   Police Officer Sean Sloan (11/30/05)
2)   Jagdish Muzumdar (12/19/05) ✓
3)   Amey Muzumdar (12/19/05)   ✓ очп
4.   Jerome Gliva (2/15/06) ✓

5.     Timothy Gahr (2/15/06) ✓
9.     Dr. George Verghese (5/4/06) ✓
8.     Dr. Surender Dhiman (6/8/06) ✓
7.     Dr. David Mikolajczak (9/8/06) ✓
5.     Karen Boyes (9/12/06) ✓
6.     Pat Gholson (10/25/06) ✓

Investigation continues.

18.     Had you consumed any alcoholic beverage within 12 hours immediately prior to the occurrence? If so, state the names and addresses of those from whom it was obtained, where it was consumed, the particular kind and amount of alcoholic beverage so consumed by you, and the names and current residence addresses of all persons known by you to have knowledge concerning the consumption of alcoholic beverages.

ANSWER:
No.

19.     Have you ever been convicted of a misdemeanor involving dishonesty, false statement or felony? If so, state the nature thereof, the date of the conviction, and the court and the caption in which the conviction occurred.  For the purpose of this interrogatory, a plea of guilty shall be considered as a conviction.

ANSWER:
No.

20.     Had you used any drugs or medications within 24 hours immediately prior to the occurrence? If so, state the names and addresses of those from whom it was obtained, where it was used, the particular kind and amount of drug or medication so used by you, and the names and current residence addresses of all persons known by you to have knowledge concerning the use of said drug or medication.

ANSWER:
No.

21.     Have you received any payment and/or consideration from any source in compensation for the injuries alleged in your complaint? If your answer is in the affirmative, state:

a,     The amount of such payment and/or consideration received;

b.     The name of the person, firm, insurance company and/or corporation making such payment or providing other consideration and the reason for payment and/or other consideration; and

c.     Whether there are any documents evidencing such payment and/or other consideration received.

ANSWER:
For settlement of the underlying lawsuit, the Petitioner received $20,000 from Timothy Gahr and his insurer and $80,000 from Jerome Gliva and his insurer. The Petitioner's group health insurer, Mega Insurance, paid portions of his medical expenses related to the crash at issue. Investigation continues.

6

22.  State the name and address of the registered owner of each vehicle involved in the occurrence.

ANSWER:
See the Illinois Traffic Crash Report. Investigation continues.

23.  Were you the owner and/or driver of the vehicle involved in the occurrence? If so, state whether the vehicle was repaired and, if so, state when, where, by whom, and the cost of the repairs.

ANSWER:
Yes, the Petitioner was the driver of the vehicle. See the repair bill produced by the Petitioner in his Response to the Respondent's Rule 214 Request for Production. Investigation continues.

24.  What was the purpose and/or use for which the vehicle was being operated at the time of the occurrence?

ANSWER:
The Petitioner and his son were test-driving the vehicle.

25.  State the names and addresses of all persons who have knowledge of the purpose for which the vehicle was being used at the time of the occurrence.

ANSWER:
Jagdish D. Muzumdar, 1303 Midwest Club Parkway, Oak Brook, IL 60523
Amey Muzumdar, 1303 Midwest Club Parkway, Oak Brook, IL 60523
Steve Sarafino, salesman for Continental Nissan, LeGrange, IL
Investigation continues.

26.  Pursuant to Illinois Supreme Court Rule 213 (f), provide the name and address of each lay witness, independent expert witness and controlled expert witness who will offer any testimony and state the following for each type of witness:

a.  For lay witnesses, identify the subjects on which the witness will testify.

b.  For independent expert witnesses, identify the subjects on which the witness will testify and the opinions the part expects to elicit.

c.  For controlled expert witnesses, identify the subject matter on which the witness will testify; the conclusions and opinions of the witness and the bases therefore; the qualifications of the witness; and any reports prepared by the witness about the case.

ANSWER:
The Petitioner has not completed discovery or his preparation for trial and the Petitioner's responses are, therefore, made only on the basis of such information as is currently known and reasonably available. The Petitioner's response does not purport to constitute a final statement of all of the Petitioner's knowledge regarding any particular subject and is made without prejudice to the Petitioner's right to introduce additional evidence at the time of the trial, to make disclosures consistent with case management conference orders that might be entered by the Court in this case, and to supplement these responses, as appropriate, once discovery and trial preparation has been completed. It is contemplated that the discovery depositions of these witnesses will be taken in the course of this litigation

and that said depositions will serve as supplements to this response and disclosure. The Petitioner reserves the right to name and disclose additional Rule 213(f) witnesses, including but not limited to controlled experts, in accordance with the Court's case management orders. The Petitioner reserves the right to supplement this response and call additional witnesses at the trial of this matter as their identities, opinions, and testimony become known.

### Rule 213(f)(1) Lay witnesses
Jagdish D. Muzumdar, 1303 Midwest Club Parkway, Oak Brook, IL 60523
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.

The Petitioner will testify to his background, education, experience, training, present employment, wage, salary and job duties, his employment at the time of the 03/26/04 crash, the amount of his wages from his employment and his job duties, including the physical activities associated with his job duties. He will testify as to how he was paid from 2000 to the present and that his income was directly related to the quantity of patients he evaluated and treated. He will testify that since 2000 the number of patients coming to the Silver Cross Hospital emergency room has increased and that since the crash he has seen fewer patients per day/week/month due to his injuries from the crash at issue. He will testify as to how the injuries from the crash have limited him physically and his speed in seeing patients, how many patients he could see per day/week/month before and after the crash at issue, how much he earned before and after the crash at issue, and how the crash caused him to see a fewer number of patients per day/week/month and which caused him to lose wages and income.

The Petitioner will testify about the 03/26/04 car crash, his observations before, during and after the crash, his conversations with parties and witnesses before, during and after the crash, his observations of the vehicles before and after the crash, the speed and path of the vehicles before, during and after the crash, the force of the impact of the crash, his observations and conversations at the scene of the crash, statements from the drivers, passengers and witnesses involved in the crash, the damage to the vehicles, the location of the vehicles involved before and after the crash, the roadway at the scene of the crash, the traffic signage and/or signals at the scene of the crash, the weather conditions, the roadway conditions, the lighting conditions, the presence of any skidmarks or other physical evidence that would indicate the path of travel of the vehicles, whether the vehicles were towed from the scene, whether police were called to the scene, his observations and opinions of whether anyone involved in the crash was injured, and the nature, extent and duration of his injuries, and his complaints to his health care providers after this crash.

He will testify as to the nature, extent, and duration of his medical care and treatment that he received from his health care providers for his injuries after the crash at issue. He will testify as to when he saw them, what his complaints were, what the health care providers did for him, said to him and recommended for him, the nature, extent and duration of their examinations of him, the testing done on him and the therapies and treatment performed for him, and the therapy prescribed for him and that he performed such therapy.

The Petitioner will testify as to his pecuniary and bodily injuries after the crash, the medical care and treatment he received for these injuries, and how these injuries impacted his life including but not limited to his pain and suffering and his resulting disability and wage loss. He will opine that the crash between the vehicles was very hard and violent in the crash, that he had pain and limited range of motion and strength in his back after the crash, that he had pain in his back and left knee after this crash, that he had difficulty performing activities of daily living such as lifting things and work activities after the crash for periods of time, that he never had any pain, limited range of motion, or impaired strength in these body areas before 03/26/04, that he never had any

difficulties with his work activities or activities of daily living before 03/26/04, and that he was in good health before 03/26/04. He will testify has to the pain, weakness, and limited range of motion he presently experiences and how these affect his activities.

The Petitioner reserves the right to supplement this response and disclose additional testimony and opinions from this witness as they become known.

**Amey Muzumdar, 1303 Midwest Club Parkway, Oak Brook, IL 60523**
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.

It is expected that this witness will testify about the 03/26/04 car crash, his observations and activities before, during and after the crash, his conversations with parties and witnesses and the investigating police officer before, during and after the crash, his observations of the vehicles before and after the crash, the speed and path of the vehicles before, during and after the crash, the force of the impact of the crash, his observations and conversations at the scene of the crash, statements from the drivers, passengers and witnesses involved in the crash, the damage to the vehicles, the location of the vehicles involved before and after the crash, the roadway at the scene of the crash, the traffic signage and/or signals at the scene of the crash, the weather conditions, the roadway conditions, the lighting conditions, the presence of any skidmarks or other physical evidence that would indicate the path of travel of the vehicles, whether the vehicles were towed from the scene, whether police were at the scene, his observations and opinions of whether anyone involved in the crash was injured, and the nature, extent and duration of the injuries.

The Petitioner's attorneys expect that this witness will testify about his observations and opinions concerning the Petitioner's health before and after the crash at issue and the nature, extent and duration of the Petitioner's injuries, pain complaints, and disability after the crashes at issue. This witness may testify as to his observations of the Petitioner's pecuniary and bodily injuries after the crash, the medical care and treatment the Petitioner received for these injuries, and how these injuries impacted the Petitioner's life including but not limited to the Petitioner's pain and suffering and the Petitioner's resulting disability and wage loss. This witness will opine that the Petitioner experienced pain, suffering, disability, a limited range of motion and strength after the crashes, that the Petitioner had difficulty doing certain activities of daily living, that the Petitioner had pain, disability, and weakness in his back after the crash, that the Petitioner continues to have pain, disability, and discomfort in these body areas and that the Petitioner had difficulty and continues to have difficulty performing activities of daily living, that the Petitioner continues to have pain in these body areas when the Petitioner does his present activities, that the Petitioner never had any chronic pain, limited range of motion, or impaired strength in these body areas before the 03/26/04 crash, that the Petitioner never had any difficulties with his activities of daily living before the 03/26/04 crash, and that the Petitioner was in good health before this crash.

The Petitioner reserves the right to supplement this response and disclose additional testimony and opinions from this witness as they become known.

**Jerome Gliva, 12523 71st Court, Palos Height, IL 60463**
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition. The Petitioner reserves the right to supplement this response and disclose additional testimony and opinions and bases of opinions from this witness as they become known.

**Timothy Gahr, 4120 Park Ave., Brookfield, IL 60513**
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition. The Petitioner

reserves the right to supplement this response and disclose additional testimony and opinions and bases of opinions from this witness as they become known.

### Rule 213(f)(2) Independent expert witnesses
Countryside Police Officer Shawn Sloan, Countryside Police Department, 5550 East Ave., Countryside, IL 60525
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.    The Petitioner reserves the right to supplement this response and disclose additional testimony and opinions and bases of opinions from this witness as they become known.

### Surender Dhiman, M.D., Community Orthopedics, 1240 Essington Road, Suite 200, Joliet IL 60435
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.

Based on the medical records and the Petitioner's conversations with his health care providers, it is expected that this witness may testify to the medical care and treatment of the Petitioner as documented in the Petitioner's medical records and the diagnostic films and studies of the Petitioner pursuant to Wilson v. Clark. He is expected to testify about the history he received from the Petitioner at each visit, the Petitioner's lack of complaints and symptoms in his injured areas of his body before the 03/26/04 crash, his knowledge of the circumstances surrounding the Petitioner's 03/26/04 crash, the nature, extent and duration of the Petitioner's subsequent injuries from the crash, the complaints of the Petitioner at each visit, his physical examination of the Petitioner at each visit, his medical evaluation of the Petitioner, his diagnosis of the Petitioner's injuries and the bases therefore, the proximate cause of the Petitioner's injuries, the nature, extent and permanency of the Petitioner's injuries and resulting disabilities, the medical care and treatment of the Petitioner, including but not limited to the tests and procedures performed on the Petitioner, his knowledge of the medical care and treatment given to the Petitioner by other health care providers, his recommendations, if any, for future medical care and treatment for the Petitioner, the future prognosis of the Petitioner's injuries, the risk of future injury and/or disability for the Petitioner, his knowledge of the charges for his medical services, the charges and costs for future medical care and treatment, and his education, experience, and training as a physician and his experience in diagnosing and treating injuries similar to the Petitioner's injuries.

The Petitioner further expects that this witness may opine that the crash of 03/26/04; proximately caused the Petitioner to have injuries to his left knee and spine and back, including but not limited to disk protrusions at L4-L5 and L5-S1 with radicular pain and lumbar muscle strains, sprains, and tears and/or possible aggravation of asymptomatic pre-existing conditions in the Petitioner's left knee and lumbar spine. He may testify and explain that there can be a delayed onset of pain and symptoms of a lumbar spine and knee injury after the initial trauma and a worsening and increase in pain and symptoms after the initial trauma and that this may have occurred with the Petitioner in this instance. He may opine that 03/26/04 crash could have caused the knee and lumbar spine injuries and/or aggravated asymptomatic pre-existing conditions in the Petitioner's left knee and lumbar spine even if the crash was at a low speed and it produced only minimal damage to the vehicles and he will explain this opinion and the based of this opinion. He may opine that these injuries and conditions of ill-being produced pain, suffering and disability for the Petitioner. He may also opine that the Petitioner did not have these injuries, conditions and associated symptoms before this 03/26/04 crash and that this 03/26/04 crash proximately caused these conditions of ill-being, complaints and disability. Alternatively, he may testify that the Petitioner had degenerative changes in his knee and spine prior to the 03/26/04 crash, but that these degenerative changes were asymptomatic, not painful and did not produce any disability for the Petitioner and that the crash aggravated and

exacerbated these pre-existing conditions and made them symptomatic, painful, and disabling. He may testify that these injuries and conditions of ill-being caused or aggravated by the crash necessitated diagnostic and medical procedures on the Petitioner's injured parts of his body, physical therapy, and other medical care and treatment, that this medical care and treatment was painful to the Petitioner at times, and that these injuries resulted in pain and suffering, impaired range of motion and strength, and disability to the Petitioner. He may testify that the injuries from this crash and their associated symptoms and conditions of ill-being are permanent injuries and that the injuries from this crash might or could cause other symptoms and conditions of ill-being in the future and that these other symptoms and conditions of ill-being with their resulting disability and impairment might or could be permanent in nature and could cause further progress and worsen in the future. He may testify that the Petitioner's injuries from this crash caused him limitations in his ability to do certain activities of daily living and study activities and they may testify as to the nature, extent, and duration of these limitations. He may testify that the Petitioner's physical limitations might or could be permanent in nature and might or could worsen as time passes, that he may be at risk for future injury and/or disability, and give such percentage of risk of future injury and/or disability, and may require future medical care and treatment. He may testify as to the nature, risks, and cost of this future medical care and treatment which may include additional medications, physician visits, EMG testing, additional MRIs or discography, physical therapy, steroidal and/or epidural injections, pain management treatment, and surgical procedures, including laminectomies and diskectomies. He will testify that based on his examination and interaction with the Petitioner, the Petitioner did not fake, exaggerate or magnify his complaints and symptoms concerning his left knee and lumbar spine and that the Petitioner was not malingering and was not exhibiting behavior consistent with secondary gain.

The Petitioner expects that this witness may testify about the diagnostic tests and films taken of the Petitioner and about the information contained in the medical records, reports, and films from their respective offices and facilities and copies of records and films from the Petitioner's other health care providers.

This witnesses may testify that he is familiar with the record keeping at his office and facilities where the Petitioner received medical care and treatment and that it was the practice of these facilities to keep the medical records of the Petitioner, that the Petitioner's medical records were made by him and other health care providers with knowledge about the Petitioner's medical condition, care and treatment, that the Petitioner's medical records were made at or near the time of the acts, events, conditions, opinions or diagnoses appearing on them, that the Petitioner's medical records were made as part of his respective medical practice and the practice of other health care providers of the Petitioner, that the Petitioner's medical records were kept in the ordinary course of business at the facilities where the Petitioner received medical care and treatment and that he relied on these medical records, documents and films in forming his respective opinions and providing care and treatment to the Petitioner. He will also testify that the Petitioner's medical records are the types of documents that experts in his field usually and reasonably rely upon in providing opinions and testimony about patient care and the cause, nature, extent, duration and prognosis of a patient's medical conditions and injuries.

This witness may also identify the diagnostic films of the Petitioner, when they were taken, where they were taken, who took them, and what these films purport to show. He may testify that he is familiar with the procedures for obtaining the diagnostic films of the Petitioner, that these procedures were followed with regard to the diagnostic films taken of the Petitioner, that the machine used to produce the diagnostic films of the Petitioner was in good working order when the films were taken, that the films accurately show the body parts they purport to show.

This witness may also testify that he is familiar with the charges and bills for the medical services provided to the Petitioner for his injuries from the occurrence at issue and that they are

familiar with the usual, reasonable and customary charges made by the medical profession for such services in this area and that the charges and bills of the Petitioner were usual, reasonable and customary charges made by the medical profession for such services in this area.

This witness may also testify that certain demonstrative evidence presented by the Petitioner's attorneys at trial accurately depicts the human anatomy that it purports to show. This witness may also use demonstrative evidence and diagnostic films to explain to the jury the nature and extent of the Petitioner's injuries.

All of the trial opinions and testimony of this witness are based on his respective education, training and experience as a physician, his medical examinations and evaluations of the Petitioner, statements from the Petitioner and others, and his review of the medical records of the Petitioner.

The Petitioner reserves the right to supplement this response and disclose additional opinions, facts, and statements from this witness as they become known.

George Verghese, M.D., Community Orthopedics, 1240 Essington Road, Suite 200, Joliet, IL 60435

This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.

Based on the medical records and the Petitioner's conversations with his health care providers, it is expected that this witness may testify to the medical care and treatment of the Petitioner as documented in the Petitioner's medical records and the diagnostic films and studies of the Petitioner pursuant to Wilson v. Clark. He is expected to testify about the history he received from the Petitioner at each visit, the Petitioner's lack of complaints and symptoms in his injured areas of his body before the 03/26/04 crash, his knowledge of the circumstances surrounding the Petitioner's 03/26/04 crash, the nature, extent and duration of the Petitioner's subsequent injuries from the crash, the complaints of the Petitioner at each visit, his physical examination of the Petitioner at each visit, his medical evaluation of the Petitioner, his diagnosis of the Petitioner's injuries and the bases therefore, the proximate cause of the Petitioner's injuries, the nature, extent and permanency of the Petitioner's injuries and resulting disabilities, the medical care and treatment of the Petitioner, including but not limited to the tests and procedures performed on the Petitioner, his knowledge of the medical care and treatment given to the Petitioner by other health care providers, his recommendations, if any, for future medical care and treatment for the Petitioner, the future prognosis of the Petitioner's injuries, the risk of future injury and/or disability for the Petitioner, his knowledge of the charges for his medical services, the charges and costs for future medical care and treatment, and his education, experience, and training as a physician and his experience in diagnosing and treating injuries similar to the Petitioner's injuries.

The Petitioner further expects that this witness may opine that the crash of 03/26/04, proximately caused the Petitioner to have injuries to his left knee and spine and back, including but not limited to disk protrusions at L4-L5 and L5-S1 with radicular pain and lumbar muscle strains, sprains, and tears and/or possible aggravation of asymptomatic pre-existing conditions in the Petitioner's left knee and lumbar spine. He may testify and explain that there can be a delayed onset of pain and symptoms of a lumbar spine and knee injury after the initial trauma and a worsening and increase in pain and symptoms after the initial trauma and that this may have occurred with the Petitioner in this instance. He may opine that 03/26/04 crash could have caused the knee and lumbar spine injuries and/or aggravated asymptomatic pre-existing conditions in the Petitioner's left knee and lumbar spine even if the crash was at a low speed and it produced only minimal damage to the vehicles and he will explain this opinion and the based of this opinion. He may opine that these injuries and conditions of ill-being produced pain.

12

suffering and disability for the Petitioner. He may also opine that the Petitioner did not have these injuries, conditions and associated symptoms before this 03/26/04 crash and that this 03/26/04 crash proximately caused these conditions of ill-being, complaints and disability. Alternatively, he may testify that the Petitioner had degenerative changes in his knee and spine prior to the 03/26/04 crash, but that these degenerative changes were asymptomatic, not painful and did not produce any disability for the Petitioner and that the crash aggravated and exacerbated these pre-existing conditions and made them symptomatic, painful, and disabling. He may testify that these injuries and conditions of ill-being caused or aggravated by the crash necessitated diagnostic and medical procedures on the Petitioner's injured parts of his body, physical therapy, and other medical care and treatment, that this medical care and treatment was painful to the Petitioner at times, and that these injuries resulted in pain and suffering, impaired range of motion and strength, and disability to the Petitioner. He may testify that the injuries from this crash and their associated symptoms and conditions of ill-being are permanent injuries and that the injuries from this crash might or could cause other symptoms and conditions of ill-being in the future and that these other symptoms and conditions of ill-being with their resulting disability and impairment might or could be permanent in nature and could further progress and worsen in the future. He may testify that the Petitioner's injuries from this crash caused him limitations in his ability to do certain activities of daily living and study activities and they may testify as to the nature, extent, and duration of these limitations. He may testify that the Petitioner's physical limitations might or could be permanent in nature and might or could worsen as time passes, that he may be at risk for future injury and/or disability, and give such percentage of risk of future injury and/or disability, and may require future medical care and treatment. He may testify as to the nature, risks, and cost of this future medical care and treatment which may include additional medications, physician visits, EMG testing, additional MRIs or discography, physical therapy, steroidal and/or epidural injections, pain management treatment, and surgical procedures, including laminectomies and diskectomies. He will testify that based on his examination and interaction with the Petitioner, the Petitioner did not fake, exaggerate or magnify his complaints and symptoms concerning his left knee and lumbar spine and that the Petitioner was not malingering and was not exhibiting behavior consistent with secondary gain.

The Petitioner expects that this witness may testify about the diagnostic tests and films taken of the Petitioner and about the information contained in the medical records, reports, and films from their respective offices and facilities and copies of records and films from the Petitioner's other health care providers.

This witnesses may testify that he is familiar with the record keeping at his office and facilities where the Petitioner received medical care and treatment and that it was the practice of these facilities to keep the medical records of the Petitioner, that the Petitioner's medical records were made by him and other health care providers with knowledge about the Petitioner's medical condition, care and treatment, that the Petitioner's medical records were made at or near the time of the acts, events, conditions, opinions or diagnoses appearing on them, that the Petitioner's medical records were made as part of his respective medical practice and the practice of other medical care providers of the Petitioner, that the Petitioner's medical records were kept in the ordinary course of business at the facilities where the Petitioner received medical care and treatment and that he relied on these medical records, documents and films in forming his respective opinions and providing care and treatment to the Petitioner. He will also testify that the Petitioner's medical records are the types of documents that experts in his field usually and reasonably rely upon in providing opinions and testimony about patient care and the cause, nature, extent, duration and prognosis of a patient's medical conditions and injuries.

This witness may also identify the diagnostic films of the Petitioner, when they were taken, where they were taken, who took them, and what these films purport to show. He may testify that he is familiar with the procedures for obtaining the diagnostic films of the Petitioner, that

13

these procedures were followed with regard to the diagnostic films taken of the Petitioner, that the machine used to produce the diagnostic films of the Petitioner was in good working order when the films were taken, that the films accurately show the body parts they purport to show.

This witness may also testify that he is familiar with the charges and bills for the medical services provided to the Petitioner for his injuries from the occurrence at issue and that they are familiar with the usual, reasonable and customary charges made by the medical profession for such services in this area and that the charges and bills of the Petitioner were usual, reasonable and customary charges made by the medical profession for such services in this area.

This witness may also testify that certain demonstrative evidence presented by the Petitioner's attorneys at trial accurately depicts the human anatomy that it purports to show. This witness may also use demonstrative evidence and diagnostic films to explain to the jury the nature and extent of the Petitioner's injuries.

All of the trial opinions and testimony of this witness are based on his respective education, training and experience as a physician, his medical examinations and evaluations of the Petitioner, statements from the Petitioner and others, and his review of the medical records of the Petitioner.

The Petitioner reserves the right to supplement this response and disclose additional opinions, facts, and statements from this witness as they become known.

**David J. Mikolajczak, DO, FACOEP, Medical Director of Emergency Services at Silver Cross Hospital, 1200 Maple Road, Joliet, IL 60432**
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.

This witness will testify to his background, education, experience, training, present employment, and job duties, he will testify as to the Petitioner's work and job duties, and the nature, extent and duration of the physical aspects and requirements associated with the Petitioner's job duties, the Petitioner's ability to perform his job duties before and after the 03/26/04 crash, he will testify that after the 03/26/04 crash the Petitioner experienced pain in his lower back which impaired his ability to perform his job duties to the extent and duration as before the crash at issue, and he will testify to the Petitioner's employment at the time of the 03/26/04 crash. He will testify as to how the Petitioner was paid from 2000 to the present and that the Petitioner's income was directly related to the quantity of patients he evaluated and treated. This witness will testify that since 2000 the number of patients coming to the Silver Cross Hospital emergency room has increased and he will testify as to the basis of this information. He will testify that since the crash the Petitioner seen fewer patients per day/week/month due to his injuries from the crash at issue. This witness will testify as to how the injuries from the crash have limited the Petitioner physically and his speed in seeing patients, how many patients he could see per day/week/month before and after the crash at issue, and how the crash caused him to see a fewer number of patients per day/week/month and which caused him to lose wages and income. He will testify that the Petitioner was not impaired in any way in performing his job duties before the crash at issue.

This witness will testify to any medical care and treatment, physical manipulations and adjustments he provided to the Petitioner after the 03/26/04 crash, the intended purpose of such treatment, the nature, extent, and duration of such treatment, the indications for such treatment, the effect of such treatment on the Petitioner, and that such treatment was reasonable and necessary for the Petitioner's complaints, conditions of ill-being and injuries from the 03/26/04 crash.

14

Based on his observations of the Petitioner and his interactions and conversations with the Petitioner, this witness will testify as to his knowledge and understanding as to the circumstances of the crash at issue, the Petitioner's complaints after the crash, how the crash caused injuries, pain and disability for the Petitioner, the nature, extent and duration of such injuries and complaints, and that these conditions caused or aggravated by the crash at issue impaired the Petitioner's work as an emergency room physician. He will testify as to his knowledge as to how many patients the Petitioner saw before and after the crash at issue and how the crash caused him to see fewer patients per month and how the injuries after the crash have limited the Petitioner in performing his work. The Petitioner reserves the right to supplement this response and disclose additional testimony and opinions from this witness as they become known.

**Karen A. Boyes, Pierce, Riesbeck & Associates, LLP, 485 S. Frontage Road, Suite 310, Burr Ridge, IL 60527**
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.

It is expected that this witness will testify to her background, education, experience, and training as a certified public accountant and her present employment and job duties and she will testify that she and other employees of her firm prepared the income tax returns and financial statements for the Petitioner and his medical corporation. She will testify to the information contained in the aforementioned documents and the amount of profit and wages the Petitioner received from the services he provided as an emergency room physician from 2000 to the present, and prior to 2000 if necessary. She will testify that the income documents of the Petitioner and his medical corporation, including but not limited to 1099s and financial statements, indicate a decrease and loss of income after the 03/26/04 car crash at issue and she will show and explain the documents to the jury that corroborate the aforementioned decrease and loss. She will testify that since the time of the crash, the Petitioner and his medical corporation have had a decrease in his income from his emergency room physician services in excess of $100,000. She will testify that the income tax returns and financial documents were prepared in accordance with generally accepted accounting principles. This witness will testify that she is familiar with the record keeping at her firm where the income tax returns and other financial documents of the Petitioner and his medical corporation were prepared and kept and that it is the practice of her firm to keep these records, that the records were made by the witness and others at her firm with knowledge about the information contained in the records, that the records were made at or near the time of the acts and events appearing on them, that the records were made as part of the business of the firm and that these records were kept in the ordinary course of business of the firm and that she relied on these records and documents in forming her opinions in this matter. The Petitioner reserves the right to supplement this response and disclose additional testimony and opinions from this witness as they become known.

**Pat Gholson, Team Health, 5000 Hopyard. Road, Suite 100, Pleasanton, CA 94588**
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition.

It is expected that this witness will testify to her background, education, experience, and training and her present employment and job duties. She will testify that she and other employees of her firm prepared the fee calculation sheets for the Petitioner's work at Silver Cross Hospital. She will testify as to the foundation for these fee calculation sheets, which have been previously disclosed. She will testify to the information contained in the aforementioned documents and the amount of pay, wages and fees the Petitioner received from the services he provided as an emergency room physician at Silver Cross Hospital. This witness will testify that she is familiar with the record keeping at her firm where the fee calculation sheets are calculated and prepared and kept and that it is the practice of her firm to keep these records, that the records were made by the witness and others at her firm with knowledge about the information contained in the

15

records, that the records were made at or near the time of the acts and events appearing on them, that the records were made as part of the business of the firm of this witness, that these records were kept in the ordinary course of business of the firm and that she relied on these records and documents in giving her testimony in this matter. The Petitioner reserves the right to supplement this response and disclose additional testimony and opinions from this witness as they become known.

Record keepers of the Petitioner's health care providers (if necessary)

## Rule 213(f)(3) Controlled expert witnesses
Jagdish D. Muzumdar, 1303 Midwest Club Parkway, Oak Brook, IL 60523
This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's discovery deposition. See the above disclosure of this witness's expected testimony. The Petitioner reserves the right to supplement this response and disclose additional opinions, facts, and statements from this witness as they become known.

Karen A. Boyes, Pierce, Riesbeck & Associates, LLP, 485 S. Frontage Road, Suite 310, Burr Ridge, IL 60527
It is the Petitioner's assertion that this witness is <u>not</u> a controlled expert witness as defined by Rule 213(f)(3) since she is not a party, the party's current employee, or the party's retained expert; however, without waiving his right to object to this witness's categorization as a Rule 213(f)(3) controlled expert witness, the Petitioner will err on the side of caution and disclose this witness as a Rule 213(f)(3) witness since she is the Petitioner's accountant and full cooperation is expected from this witness as referenced in the comment to Rule 213(f) concerning controlled witnesses.

This witness will testify to the testimony, information, facts, opinions, bases of opinions and all logical corollaries thereof contained in this witness's expected deposition. See the above disclosure of this witness's expected testimony. The Petitioner reserves the right to supplement this response and disclose additional opinions, facts, and statements from this witness as they become known.

The Petitioner reserves the right to name and disclose additional Rule 213(f) witnesses, including but not limited to controlled experts, in rebuttal to any witnesses disclosed by the Defendants at a later date. Investigation continues.

27.   List the names and addresses of all other persons (other than yourself and persons heretofore listed) who have knowledge of the facts of the occurrence and/or injuries and damages claimed to have resulted therefrom.

## ANSWER:
Pratima Muzumdar (Petitioner's wife), 1303 Midwest Club Parkway, Oak Brook, IL 60523
See the Illinois Traffic Crash Report, the Petitioner's medical records and the Petitioner's Answer to Interrogatory No. 26. Investigation continues.

28.   Identify any statements, information and/or documents known to you and requested by any of the foregoing interrogatories which you claim to be work product or subject to any common law or statutory privilege, and with respect to each interrogatory, specify the legal basis for the claim as required by Illinois Supreme Court Rule 201 (n).

## ANSWER:

None other than the Petitioner's statements to and from his attorneys for which the attorney-client privilege is asserted and the Petitioner's statements to and from his insurance company for which the insured-insurer privilege is asserted.

## SIGNATURE PAGE FOR INTERROGATORY ANSWERS

The foregoing Interrogatories have been answered and signed by:

_____
JAGDISH MUZUMDAR

## ATTESTATION

STATE OF ILLINOIS     )
                       ) SS
COUNTY OF _Kane_    )

The undersigned, being first duly sworn on oath, deposes and states that he is the Petitioner in the above-captioned matter; that he has read the foregoing document, and the answers made herein are true, correct and complete to the best of his knowledge and belief.

_____
JAGDISH MUZUMDAR

Subscribed and sworn to before me on _____ 2007,

BY: _____
      (NOTARY PUBLIC

AMONI LAW OFFICES
One North Constitution Drive
Aurora, Illinois 60506
Telephone:    (630) 264-2020
Facsimile:     (630) 801-9833

OFFICIAL SEAL
BESSIE L SCHWARTZ
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/08/08

18